IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RONALD WATSON LAFFERTY,<br><br>                         Petitioner,<br><br>v.<br><br>SCOTT CROWTHER, Warden, Utah State Prison,<br><br>                         Respondent. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:07-CV-322<br><br>Judge Dee Benson |

Mr. Lafferty has filed a motion asking this court to excuse the procedural default of two of his claims in state court: (1) Claim 33 (ineffective assistance of trial counsel for failing to keep biased jurors from serving on his jury); and (2) Claim 10, Example 9 (ineffective assistance of direct appeal counsel for failing to challenge the fact that the jurors were not required to submit a special verdict form).  Citing *Martinez v. Ryan*[1] and *Trevino v. Thaler*,[2] Mr. Lafferty argues that the default of these claims was caused by the deficient performance of his state post-conviction counsel and resulted in prejudice to him. He asks this court to allow him the opportunity to further develop these claims through discovery and an evidentiary hearing. After a thorough review of the pleadings, the court finds that Mr. Lafferty has not proven cause for nor prejudice from his default of claim 33.  And because of the Tenth Circuit's holding that *Martinez* does not apply to claims of deficient performance by appellate counsel, Mr. Lafferty's claim 10, example

---

[1] 132 S.Ct. 1309 (2012).

[2] 133 S.Ct. 1911 (2013).

9 does not qualify for relief.  Therefore Mr. Lafferty's *Martinez* motion is denied and the claims

are defaulted and barred from merits review.


## I.  Relevant Legal Standards

### A.  The equitable rule announced in *Martinez* is applicable in Utah pursuant to *Trevino v. Thaler.*

The first question that the court must address is whether *Martinez* and *Trevino* are even

applicable in Utah.  The United States Supreme Court's rule in *Martinez* applies only "[w]here

under state law, claims of ineffective assistance of trial counsel *must* be raised in an initial-

review collateral proceeding."[3]  The Court defined "initial-review collateral proceedings" as

"collateral proceedings which provide the first occasion to raise a claim of ineffective assistance

at trial."[4]  Utah law permits convicted persons to raise trial ineffective assistance claims on

appeal.[5]  In fact, according to Respondent, "challenging trial counsel's effectiveness on direct

appeal has become commonplace in Utah."[6]  Thus the *Martinez* exception alone does not apply

in Utah. However, in *Trevino v. Thaler*, the United States Supreme Court expanded the

application of *Martinez* to any state where "the procedural framework, by reason of its design

and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful

opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."[7]  The

Supreme Court applied the *Martinez* exception in the *Trevino* case because Texas time limits

---

[3] *Martinez,* 132 S.Ct. at 1320 (emphasis added).

[4] *Id.* at 1315.

[5] *See, e.g., State v. Litherland,* 12 P.3d 92, 98 (Utah 2000); Utah R. App. P. 23B, effective October 1, 1992 (adopting a procedure for a remand to develop additional facts on an appellate challenge to trial counsel's representation).

[6] Doc. No. 391 at 40.

[7] *Trevino,* 133 S.Ct. at 1921.

required Trevino to present his trial ineffective-assistance claim without a reasonable opportunity
to develop supporting evidence.  The question before us is whether *Trevino* applies to Utah's
procedural framework.

The state argues that *Trevino* does not apply in Utah, because the practical barriers of
raising a trial ineffectiveness claim on direct appeal that forced Trevino to first raise his claim on
collateral review do not exist in Utah.  The Tenth Circuit, in *Fairchild v. Trammell*, held that
*Martinez* and *Trevino* do not apply in Oklahoma under circumstances similar to those in Utah.[8]
Some of those circumstances include Oklahoma's reasonable time allowances for briefing
ineffectiveness claims on appeal, the availability of deadline extensions, the fact that transcripts
are available for much of that time, the ability to supplement the record with new evidence
relating to counsel's performance, and the Oklahoma courts' track record of actually considering
trial ineffectiveness claims on direct appeal.[9]  The state argues that Utah law is similar to
Oklahoma law in that time limitations are reasonable and flexible; the time to appeal may be
extended or, in certain cases, reinstated; transcripts are available early in the process; and Utah
Rule of Appellate procedure 23B permits supplementation of the record on appeal with evidence
supporting a trial ineffectiveness claim. Thus, according to the state, no procedural or practical
limitations exist in Utah that would force a typical defendant to delay his or her trial
ineffectiveness claim until collateral review.

However, Mr. Lafferty argues, and the court agrees, that *Trevino* and *Martinez* do apply
in Utah, because although Utah's Rule 23B allows an ineffective assistance claim to be raised on
direct appeal under narrow circumstances,[10] the rule does not provide for the scope of

---

[8] 784 F.3d 702 (10th Cir. 2015).

[9] *Id.* at 721-22.

[10] *See* Utah R. App. P. 23B.

evidentiary development that is ordinarily necessary for claims of ineffective assistance of counsel. The Utah Supreme Court has stated that Rule 23B "was clearly not intended to provide for remand in the typical ineffective assistance case where the parties dispute whether trial counsel's actions reflected some strategy, given the facts established by the record."[11]  While Utah law does provide flexibility in time limitations and availability of transcripts, these are inadequate when most of the evidence supporting ineffective assistance of counsel claims exist outside the court record and require investigation to uncover and develop.

Mr. Lafferty also emphasizes that "trial counsel cannot reasonably be expected to raise the issue of his or her own incompetence on appeal."[12]  Utah law generally does not *require* counsel to raise his own ineffective assistance claim, but that does not mean that Mr. Lafferty's counsel could not have done so.  In fact, the Utah Supreme Court has recognized that counsel may—and often do—raise their own ineffective assistance at trial as a basis to reverse.[13] However, in the case of non-record based claims of ineffective assistance of counsel, problems such as potential conflicts between counsel and client, and counsel's potential inability to view his own actions objectively, may arise when counsel raises his own ineffective assistance claim on appeal.  The court in *Parsons* explained that "unusual circumstances" exist "when trial counsel represented the defendant on direct appeal and the defendant in a subsequent habeas proceeding contends that he had ineffective assistance of counsel at trial, on appeal, or both," and the claims should be allowed to be litigated during state habeas proceedings.[14]  The court in

---

[11] *State v. Tennyson,* 850 P.2d 461, 468 n. 5 (Utah Ct. App. 1993); *see also State v. Johnston,* 13 P.3d 175, 179 (Utah Ct. App. 2000);  *Fernandez v. Cook,* 783 P.2d 547, 549 (Utah 1989); *Dunn v. Cook,* 791 P.2d 873, 878 (Utah 1990).

[12] *Parsons v. Barnes,* 871 P.2d 516, 521 (Utah 1994).

[13] *See Tillman v. Cook,* 855 P.2d 211, 221 (Utah 1993) ("[O]ur experience has been that counsel in this state have complied with their ethical obligations and argued their own ineffectiveness on appeal.").

[14] *Parsons*, at 521.

*Trevino* also found that states have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings because these claims often involve evidence outside the trial record, and require more time to investigated than is allowed by the "abbreviated deadlines" on direct appeal.[15] For the above reasons, the court finds that *Martinez* applies in Utah pursuant to *Trevino* where Utah's procedural rules "make[ ] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."[16]

**B. Under *Martinez*, Mr. Lafferty must demonstrate an actual specific instance of deficient performance by PCR counsel and actual prejudice in order to show cause for his default.**

Next the court must determine what standard Mr. Lafferty must meet under *Martinez*. Citing a Ninth Circuit plurality opinion, Mr. Lafferty argues that his burden under *Martinez* is to demonstrate that his post-conviction (PCR) counsel was ineffective in performing below standard norms and in failing to raise a substantial claim of ineffective assistance of counsel.[17] He states that he "need now only present a colorable claim that his state post-conviction attorneys performed below the standards of minimally competent capital post-conviction attorneys in failing to raise the claims at issue."[18] The clear implication is that his burden is lower than actually demonstrating ineffective assistance, since he says he "need now *only* present a colorable claim." This mischaracterizes the standard and understates his burden, which is to demonstrate an actual, specific instance of deficient performance by PCR counsel.

Rather than identifying specific acts and omissions regarding the defaulted claims, Mr. Lafferty argues that counsel's overall performance was weak. His proffers include the

---

[15] Trevino, 133 S.Ct. at 1917-1918.

[16] *Id.* at 1921.

[17] *See, e.g., Detrich v. Ryan,* 740 F.3d at 1237, 1246.

[18] Doc. No. 381 at 14.

declaration of PCR counsel Mr. Cramer, that Mr. Lafferty's was the first post-conviction case he

had ever worked on and that he did not understand what would be required.[19]  Mr. Cramer also

stated that he was carrying an extremely heavy caseload, and was very busy with another capital

case, which interfered with his ability to adequately investigate and prepare for Mr. Lafferty's

case.[20]  He acknowledges that he and co-counsel were unable to obtain Mr. Lafferty's complete

file or complete record of his case, and that the 15,000 pages of documents they did have was too

large to be reviewed prior to filing the PCR petition.[21]

Mr. Lafferty, after discussing in detail PCR counsel's allegedly deficient overall

performance and experience, asks the court to evaluate that overall performance against

generalized ideals suggested by the professional guidelines.  Doing so, however, would not meet

the requirements of *Strickland v. Washington.*  The Supreme Court in *Martinez* explicitly

requires that an ineffective-assistance claim be proven "under the standards of *Strickland v.

Washington.*"[22]  The Court in *Strickland* said, "The object of an ineffectiveness claim is not to

grade counsel's performance.*"[23] Rather, a petitioner "making a claim of ineffective assistance

must identify the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment. The court must then determine whether, in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance."[24] The Court emphasized that "counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

---

[19] Doc. No. 381 at 17.

[20] *Id.* at 18.

[21] *Id.* at 19.

[22] *Martinez,* 132 S.Ct. at 1318 (citation omitted).

[23] *Strickland v. Washington,* 104 S.Ct. 2052, 2069 (1984).

[24] *Id,* at 2066.

professional judgment."[25]  The inquiry always focuses on the specific alleged deficient act or omission.[26]

Mr. Lafferty asks the court to evaluate post-conviction (PCR) counsel's overall performance and experience against generalized ideals suggested by professional guidelines.[27] However, the Supreme Court has affirmed that the ABA guidelines are merely evidence of what reasonably diligent attorneys would do, not "inexorable commands with which all capital defense counsel 'must fully comply.'"[28]  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."[29] Such rules "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."[30]

Under the correct standard, Mr. Lafferty's burden includes showing what evidence of trial counsel's alleged ineffectiveness PCR counsel deficiently omitted from the state post-conviction petition.  When the court considers a claim of deficient performance, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"[31]  The "burden to show that counsel's performance was deficient' rests squarely on the defendant."[32]  Under the correct standard, Mr.

---

[25] *Id.*

[26] *See United States v. Cronic,* 104 S.Ct. 2039, 2051 (1984) (holding that a petitioner can "make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel").

[27] Doc. No. 381, at 15-16, 22-24 (citing ABA guidelines and commentary).

[28] *Bobby v. Van Hook,* 130 S.Ct. 13, (2009) (citation omitted).

[29] *Strickland,* at 2065.

[30] *Id.*

[31] *Burt v. Titlow,* 134 S.Ct. 10, 17 (2013) (quoting *Strickland*, 104 S.Ct. 2052.)

[32] *Id.*

Lafferty fails to proffer evidence showing that PCR counsel omitted a trial ineffectiveness claim that all objectively reasonable attorneys would have discovered and raised in post-conviction.

Mr. Lafferty says that he has no burden to demonstrate *Strickland* prejudice resulting from PCR counsel's default of a trial ineffectiveness claim. Citing the Ninth Circuit's *Detrich* opinion again, he argues instead that the default itself "will satisfy the prejudice requirement for purposes of deciding the second prong of post-conviction counsel's ineffectiveness."[33] This is simply not true. *Martinez* clearly states that, to establish cause, a petitioner must show that his post-conviction counsel "was ineffective under the standards of *Strickland v. Washington*."[34] That means that he must prove *both* deficient performance by post-conviction counsel and prejudice.[35] To prove prejudice, he must prove "a reasonable probability that . . . the result of the proceeding would have been different," meaning "a probability sufficient to undermine confidence in the outcome."[36]

## II. Ineffective Assistance of Trial Counsel (Claim 33)

### A.   Under the Correct Standard, Mr. Lafferty's Proffer Fails to Demonstrate PCR Deficient Performance.

Mr. Lafferty acknowledges that he defaulted claim 33 by not presenting it to the state court, but argues that the default was caused by the deficient performance of his state post-conviction counsel.[37] He has asked the court, based on the *Martinez* and *Trevino* cases, to excuse the procedural default. However, Mr. Lafferty does not proffer evidence showing that PCR

---

[33] Doc. No. 381 at 26.

[34] *Martinez,* 132 S.Ct. at 1318.

[35] *Strickland,* 104 S.Ct. at 2066-67.

[36] *Id.* at 2068.

[37] Doc. No. 381 at 26.

counsel omitted a trial ineffectiveness claim that all objectively reasonable attorneys would have discovered and raised in post-conviction. Mr. Lafferty's claim of ineffective assistance of trial counsel is based on trial counsel's allegedly deficient performance in failing to adequately question potential jurors who had exhibited bias on their questionnaires during *voir dire* so that the trial court could properly exclude them from jury service.[38] Mr. Lafferty argues that 3 jurors, one fourth of his panel, appeared to have religious biases, preconceived opinions about Mr. Lafferty's guilt, or both, and as a result he was deprived of his right to an impartial jury.

The three jurors whom Mr. Lafferty claims exhibited bias in their juror questionnaires, which should have been addressed during *voir dire* were Juror 82, Juror 105, and Juror 213. Lafferty says that Jurors 82 and 105 both implied bias in their questionnaires, and counsel should have established that in *voir dire* and moved to exclude them from the jury. He said that Juror 82 "had already formed an opinion about Mr. Lafferty," that "she thought he was guilty because he 'was proven guilty in the previous trial.'"[39] He noted that Juror 82 also stated, "if innocent, [Mr. Lafferty] should testify and not fear doing so."[40] Similarly, he said that Juror 105 stated in her questionnaire that "she believed people who were charged with crimes are usually guilty and that the death penalty 'is necessary . . . [to] bring things to an end."[41]

Based on these statements, Mr. Lafferty argues that the jurors may have had preconceived notions about his guilt, his right to remain silent, and the appropriate sentence. This is not necessarily a sufficient basis to prove ineffective assistance of counsel. The Tenth Circuit has said that a "juror is not shown to have been partial simply because he or she had a

---

[38] Doc. No. 39 at 250-53; Doc. No. 349 at 119-120.

[39] Doc. No. 381 at 28.

[40] *Id.*

[41] Doc. No. 381 at 28-29.

preconceived notion as to the guilt or innocence of the accused."[42]  Rather, a petition "must show that the juror had such a fixed opinion that he or she could not judge impartially."[43] Bias can be demonstrated only where a juror's belief or preconception will "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."[44]

Mr. Lafferty does not proffer any evidence that PCR counsel could have relied on to demonstrate trial ineffectiveness during *voir dire*.  He notes that the transcript of the *voir dire* of Jurors 82 and 105 is missing from the record, so he is unable to draw from this part of the record to support his claim.  While it is unfortunate that the transcript is missing, "[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'"[45]  Mr. Lafferty has failed to show that trial counsel performed deficiently during *voir dire*, and that PCR counsel had evidence of the alleged deficient performance and deficiently failed to present the claim during post-conviction proceedings.  He simply speculates that trial counsel did not question the two jurors about bias, or if he did, the answers showed bias so strong that all objectively reasonable counsel would have challenged the juror.  Under *Strickland*, in the absence of evidence to the contrary, trial counsel is assumed to have asked the relevant questions and to have received satisfactory answers.

Mr. Lafferty shows nothing that demonstrates that Juror 82 and Juror 105 were unable or unwilling to set aside their personal views and decide the case according to the evidence and instructions.  In fact, their questionnaires show just the opposite.  Juror 82 said that she could set

---

[42] *Hale v. Gibson,* 227 F.3d 1298, 1319 (10th Cir. 2000).

[43] *Id.*

[44] *Wainwright v. Witt,* 105 S.Ct. 844, 852 (1985).

[45] *Titlow,* 134 S.Ct. at 17 (quoting *Strickland* at 2052).

aside her opinion and "judge the case solely on the evidence presented in Court, according to the instructions given by the judge."[46]  She also said she agreed "with the principle that anyone charged with a crime must be proven guilty beyond a reasonable doubt" and that she "must not be prejudiced against the Defendant."[47]  She also said that she was "willing to accept what the law is, regardless of what [she] personally believe[s] the law is or ought to be."[48]

Juror 105 said that she believes her church is against the death penalty.[49] She also indicated that she was completely unfamiliar with Mr. Lafferty's case, having never heard of him.[50]  Like Juror 82, she agreed "with the principle that anyone charged with a crime must be proven guilty beyond a reasonable doubt," and that she "must not be prejudiced against the Defendant,"[51]  She said she was "willing to accept what the law is, regardless of what [she] personally believe[s] the law is or ought to be."[52] She also said that "the death penalty is necessary *in certain situations"* to "bring things to an end."[53]

Both of these jurors expressed a willingness to keep an open mind, follow the court's instructions, and decide the case on the merits rather than personal convictions.  Neither expressed any fixed opinion about whether Mr. Lafferty was guilty or, if they found him guilty, whether they would vote for the death penalty.  The jury questionnaires on their face refute Mr. Lafferty's bias claim.

---

[46] Doc. 381, Appendix C, at 21.

[47] *Id.* at 29.

[48] *Id. at 30.*

[49] Doc. 381, Appendix E, at 8.

[50] *Id.* at 19-20.

[51] *Id.* at 29.

[52] *Id.* at 30.

[53] *Id.* at 34  (emphasis added).

Mr. Lafferty's concerns with Juror 213 were "that she believed that blood atonement was an accepted doctrine of her church,"[54] and that based on her exposure to media related to Mr. Lafferty, she had formed an opinion about Mr. Lafferty, which she had shared with others."[55] Mr. Lafferty says that trial counsel was deficient for failing to question Juror 213 about her belief in blood atonement, which would have constituted an impermissible bias against him.  However, the record as a whole dispels the need for him to do so.  Trial counsel was very much aware of the potential for harm to Mr. Lafferty of seating a juror who believed in blood atonement.  The trial court had denied his motion to automatically exclude jurors who believed in blood atonement, but ruled that he could question prospective jurors whether they believed in blood atonement and those who could not put those subjective beliefs aside should be excused.  Juror 213's questionnaire would have dispelled any concerns counsel had about her religious beliefs.

After affirming her belief in blood atonement, Juror 213 was asked what she meant by blood atonement, and she said it means that, "a Savior was provided that through the shedding of his blood my sins may be forgiven."[56]  In response to the question of whether she had "a personal or religious belief that if a person commits murder, his life must be taken in return," she said, "No."[57]  She also said that she did not believe in "An eye for an eye, a tooth for a tooth."[58] Her expressed view is an uncontroversial view of Christian grace, where Jesus paid the price for sin, and suffering and pain are not required of the repentant sinner.

Mr. Lafferty also expressed concern that Juror 213 stated that she had been exposed to media related to Mr. Lafferty, and that based on that, she had formed opinions about him and she

---

[54] Doc. No. 381, Appendix D at 7.

[55] *Id.* at 19-20.

[56] Doc. No. 381 at 7.

[57] *Id.*

[58] *Id.*

had shared them with others.[59]  She said nothing, however, that would indicate that her opinions were so fixed that she would be unable to set them aside and make a decision based on the evidence.  When asked how strong her preconceptions were, she admitted they were weak.  "Q: And did you follow the news reports very closely back when it happened?"[60] "A:  I have to admit that I didn't."[61]  And when asked whether she had formed an opinion as to Mr. Lafferty's guilt or innocence, she clarified, "I guess I didn't."[62]

Juror 213 expressed some attitudes that were favorable to the defense.  She said to the prosecutor, "when my hair was a different color than it is now, I might have been somewhat more judgmental harsh [sic], but I have learned over a lot of years of experience to be objectively judgmental.  And I would hope I could do that.  I have tried to train myself in those ways."[63] She also expressed her willingness to be open-minded and to "put that aside and judge this case based solely on the evidence presented in court."[64]

Juror 213 also clarified that she would not use Mr. Lafferty's silence at trial against him. She stated in her questionnaire her belief that defendants "can take a Fifth Amendment, and–any person can—and they don't need to testify."[65]  But everyone "should have an opportunity to do so.  If not, that's their right too."[66]  She understood that Mr. Lafferty had no obligation to testify, and that not testifying "can't be used as any evidence of his guilt."[67]

---

[59] Doc. No. 381 at 28.

[60] CR5443:5.

[61] CR5443:6.

[62] CR5443:6.

[63] CR5443:12.

[64] CR5443:6, 14-16.

[65] CR5443:8

[66] CR5443:9

[67] CR5443:9.

By the time trial counsel started *voir dire*, Juror 213 had already answered critical questions on bias, affirming that she could decide the case on the law and evidence presented in court and would not feel obliged to impose death for any reason other than that law and evidence.  Trial Counsel did not need to inquire any further about blood atonement.

In support of his claim that trial counsel was deficient for failing to question Juror 213 about her belief in blood atonement, Mr. Lafferty proffers Investigator Jeremy Voas's declaration about a 2014 conversation with her that allegedly confirms that belief.  The state objects to this proffer for two reasons: (1) the conversation it describes is hearsay in violation of Rule 802, Federal Rules of Evidence, and (2) the declaration violates Rule 606(b), Federal Rules of Evidence, which prohibits the court from receiving any statement which addresses juror deliberations, the juror's vote, or the juror's mental processes concerning the verdict."  The entire conversation that Mr. Voas describes is offered for the truth of the matter, and as hearsay, none of it is admissible.  Also, several of the statements, which explain her view of the evidence or the likely effect hypothetical evidence would have had on the jury's deliberations, are inadmissible under Rule 606.

Although the statement suggests that "somebody who takes a life must have his blood shed *to find redemption,*[68] she did not say that she felt obligated or wanted to give Mr. Lafferty that redemption, or that the doctrine obligated her as a juror to vote for death.  The declaration by Mr. Voas does not show anything new that trial counsel could have relied on in formulating his *voir dire.*  Mr. Lafferty has not shown that trial counsel deficiently omitted some critical voir dire question that all competent attorneys would have asked.

---

[68] Doc. No. 381, Appendix F at 2.

Mr. Lafferty notes that trial counsel was "keenly aware of the high potential for bias in Mr. Lafferty's juror venire and expressed his concerns about pretrial publicity and the belief in blood atonement in the court prior to trial."[69]  Mr. Lafferty then argues that because trial counsel—knowing the potential for harm to Mr. Lafferty—failed to question Juror 213 about her belief in blood atonement even though she explicitly wrote about it in her juror questionnaire, his conduct could not be deemed strategic or reasonable. On the contrary, in light of the court's strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,"[70] the fact that trial counsel was keenly aware of the potential for harm and yet chose not to ask any questions of Juror 213 about blood atonement, could reasonably indicate that he was satisfied that she would not be biased.  She clearly stated in her juror questionnaire that she did *not* "have either a personal or religious belief that if a person commits murder, his life must be taken in return."[71] She also said that she did *not* believe in the statement, "An eye for an eye, a tooth for a tooth."[72]  Trial counsel's actions were reasonable in light of the facts and circumstances of the case, and did not constitute deficient performance under *Strickland.* Thus PCR counsel was not deficient in omitting them from the state post-conviction petition.

Under *Martinez*, Mr. Lafferty must show that his post-conviction counsel "was ineffective under the standards of *Strickland v. Washington,*[73] which means that he must prove both deficient performance by post-conviction counsel and prejudice.[74]  Mr. Lafferty cites the

---

[69] Doc. No. 381 at 30.

[70] *Burt v. Titlow,* 134 S.Ct. at 17 (2013).

[71] Doc. No. 381, Appendix D at 7.

[72] *Id.*

[73] *Martinez,* 132 S.Ct. at 1318.

[74] *Strickland,* 104 S.Ct. at 2067-2069 (1984).

Ninth Circuit *Detrich* case in arguing that he has no burden to demonstrate *Strickland* prejudice, because the default itself "will satisfy the prejudice requirement for purposes of deciding the second prong of post-conviction counsel's ineffectiveness."[75] As stated above, however, this court does not find the *Detrich* case to be persuasive, but rather finds that under *Martinez*, Mr. Lafferty must prove *Strickland* prejudice, which is "a reasonable probability that . . . the result of the proceeding would have been different," meaning "a probability sufficient to undermine confidence in the outcome."[76]  A petitioner must show a reasonable probability that, but for his [appellate] counsel's deficient performance, "he would have prevailed on his appeal."[77] Unless Mr. Lafferty can show that but for PCR counsel's omission, he would have received post-conviction relief, he cannot show cause under *Martinez*.  But Mr. Lafferty has disavowed his burden to show prejudice, and therefore, he has not demonstrated it.

**B.   Mr. Lafferty has not demonstrated actual prejudice from the default.**

Under *Martinez,* the PCR ineffective assistance will only show cause.  In order to excuse a default, the petitioner must also show actual prejudice *in addition* to the prejudice included in the PCR ineffectiveness analysis.  The Supreme Court has said that a petitioner "must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual*  and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[78]  Mr. Lafferty must show he "was denied 'fundamental fairness' at trial."[79]  Mr. Lafferty has not done so.  In fact, he has simply denied that he has any additional burden, and

---

[75] Doc. No. 381 at 26.

[76] *Strickland,* 104 S.Ct. at 2069.

[77] *Smith v. Robbins,* 120 S.Ct. 746, 764 (2000).

[78] *Murray v. Carrier,* 106 S.Ct. 2639, 2648 (1986) (quoting *Frady v. United States,* 102 S.Ct. 1584, 1596 (1982) (emphasis in *Frady*)).

[79]*Id.*

since he does not even meet the *Strickland* PCR prejudice standard, he certainly fails to make the higher prejudice showing.

### III.  Mr. Lafferty's Ineffective Assistance of Direct Appeal Counsel Claim (claim 10, example 9) Fails Because Both *Martinez* Itself and the Tenth Circuit Prohibit Finding Cause on Claims of Appellate Ineffectiveness.

Mr. Lafferty argues in his motion that the equitable ruling in *Martinez* extends to claims of ineffective assistance of direct appeal counsel, not just trial counsel.  He relies on a Ninth Circuit Court of Appeals case which held that the equitable rule announced in *Martinez* is also applicable to claims of ineffective assistance of appellate counsel that were not raised in an initial petition for post-conviction relief.[80]  The Ninth Circuit in *Nguyen* reasoned that there is nothing in the Supreme Court's jurisprudence to indicate that the "right to effective counsel is weaker or less important for appellate counsel than for trial counsel."[81]  This court does not find the Ninth Circuit's reasoning persuasive.

The US Supreme Court in *Martinez* explicitly limited its holding to claims of trial counsel ineffectiveness, stating that its holding "does not concern attorney errors in other kinds of proceedings."[82] "It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial."[83]  The Tenth Circuit has also rejected a request under *Martinez* to excuse a defaulted appellate ineffectiveness claim.  The court stated in *Banks v. Workman* that "*Martinez* was equally clear about what it did *not* hold."[84] The Tenth Circuit said in no uncertain terms that "*Martinez* applies

---

[80] *Nguyen v. Curry,* 736 F.3d 1287, 1289 (9th Cir. 2013).

[81] *Id.* at 1294.

[82] *Martinez* at 1320.

[83] *Id.*  (emphasis in the original)

[84] *Banks v. Workman,* 692 F.3d 1133, 1148 (10th Cir. 2012).

only to 'a prisoner's procedural default of a claim of ineffective assistance at *trial*,' not to claims of deficient performance by appellate counsel."[85] Every other circuit to consider this question has rejected the Ninth Circuit's approach and limited *Martinez* to defaulted trial claims.[86] Clearly *Martinez* did not overrule *Coleman*; it reaffirmed it "in all but the limited circumstances" of trial ineffectiveness claims defaulted in an initial-review collateral proceeding.[87]  Mr. Lafferty's claim 10 does not qualify.

## IV.  Conclusion

For the reasons stated above, the court denies Mr. Lafferty's motion to excuse his procedural defaults pursuant to *Martinez v. Ryan.*

SO ORDERED this 5th day of October, 2016.

BY THE COURT:

_____
Dee Benson
United States District Judge

---

[85] *Id.*(emphasis added by the Tenth Circuit)

[86] *Dansby v. Hobbs,* 766 F.3d 809, 833 (8th Cir. 2014) ("We therefore decline to extend *Martinez* to claims alleging ineffective assistance of counsel on direct appeal."); *Nash v. Hepp,* 740 F.3d 1075, 1079 (7th Cir. 2014) (same); *Hodges v. Colson,* 727 F.3d 517, 531 (6th Cir. 2013) (same); *Reed v. Stephens,* 739 F.3d 753, 778 n16 (5th cir. 2014) (noting that to "the extent Reed suggests that his ineffective-assistance-of-counsel claims also should be considered under *Martinez,* we decline to do so.).

[87] *Martinez,* 132 S.Ct. at 1320.