IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RONALD WATSON LAFFERTY,<br><br>          Petitioner,<br><br>v.<br><br>SCOTT CROWTHER, Warden, Utah State Prison,<br><br>          Respondent. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:07-CV-322<br><br>Judge Dee Benson |

      Petitioner Ronald Watson Lafferty, currently confined in the Utah State Prison in Draper, Utah, filed this federal habeas corpus application pursuant to 28 U.S.C. § 2254 to vacate his convictions and sentences, including his sentence of death, as being in violation of his rights under the United States Constitution.

      Respondent ("the State") has filed a request to submit the petition for final disposition, stating that the matter is fully ripe for final adjudication. In response to the State's request to submit, Lafferty notified the court that he is withdrawing those claims from his petition that the court has ruled are unexhausted and procedurally defaulted, in order to avoid the dismissal of his habeas petition as a mixed petition. He withdrew the following claims: 3, 4, 5, 7, 8 (the claims addressing attorney Steve Killpack), 10 (bases 2 and 4-14), 11 (all aspects of the claim except those related to the ABA Guidelines and funding and time limitation), 26, 29, and 33. *See* Doc. No. 407. He then requested that the court consider the merits of his remaining exhausted claims. Having done so, the court hereby denies habeas relief.

# I. FACTUAL BACKGROUND

The following facts are summarized from the opinion of the Supreme Court of Utah. *See State v. Lafferty*, 20 P.3d 342, 351-55 (Utah 2001). On the morning of July 24, 1984, four men, the defendant Ron Lafferty ("Lafferty"), his brother Dan, Charles "Chip" Carnes, and Ricky Knapp drove to Lafferty's sister-in-law Brenda's home in American Fork, Utah. The Lafferty brothers forcibly entered the home, severely beat Brenda, strangled her with a vacuum cord, and slit her throat with a knife. Dan then killed Brenda's fifteen-month-old infant daughter, Erica Lafferty, by slitting her throat. The four men next drove to Chloe Low's home, intending to murder her. After breaking into her home and determining that no one was there, the men took numerous items and left. Lafferty then began talking about driving to Richard Stowe's home to murder him. Fortunately, the men accidentally missed the turnoff to Stowe's home and instead headed to Wendover, Nevada, for the night. Ricky and Chip left the next day for Chip's brother's house in Cheyenne, Wyoming, where they were arrested on July 30, 1984; Lafferty and his brother Dan were arrested in Reno, Nevada, on August 17, 1984.

These disturbing and gruesome murders appear to have been triggered in large part by Lafferty's unorthodox religious views, which had caused him to gradually disassociate from society's mainstream during the three years preceding the murders. Critically, these drastic changes in Lafferty's beliefs and personality caused his wife Diana to divorce him early in 1984 and take their six children with her to Florida. Lafferty in turn blamed the demise of his marriage on four people: his sister-in-law Brenda, who Lafferty believed encouraged Diana to leave him; Brenda's daughter Erica, who he believed would grow up to be just as despicable as her mother; Diana's friend Chloe Low, who he believed had also helped encourage Diana's divorce from Lafferty; and Richard Stowe, the couple's ecclesiastical leader in the LDS Church who Lafferty

believed was responsible for his excommunication from the LDS Church, and who had counseled Diana during their divorce proceedings and helped her obtain financial assistance from the LDS Church.

Later that spring, Lafferty claimed that he received a revelation from God ordering that Brenda, Erica, Chloe Low, and Richard Stowe be removed "in rapid succession" and "as soon as possible." Lafferty relayed his revelation to several other members of his small unorthodox sect, including his brother Dan. For the next several months, Lafferty and his brother continued in their belief that the revelations needed to be fulfilled. On July 24, the brothers finally and tragically set Lafferty's "removal" revelation into action.

## II.    PROCEDURAL BACKGROUND

On May 7, 1985, Lafferty was convicted of two counts of first degree murder, two counts of aggravated burglary, and two counts of conspiracy to commit first degree murder, and sentenced to death on the capital murder charges. The Utah Supreme Court affirmed. *State v. Lafferty,* 749 P.2d 1239 (Utah 1988). On federal collateral review, however, the United States Court of Appeals for the Tenth Circuit vacated the convictions and sentence, holding that the state trial judge had applied the wrong legal standard to determine competency. *Lafferty v. Cook,* 949 F.2d 1546 (10th Cir. 1991), *cert. denied*, 504 U.S. 911 (1992). A second trial was held in April 1996, at which a second jury convicted Lafferty of two counts of first degree murder, aggravated burglary, and conspiracy to commit first degree murder, and again sentenced him to death. The Utah Supreme Court affirmed Lafferty's second conviction and sentence on February 23, 2001. *State v. Lafferty*, 20 P.3d 342 (Utah 2001).

Lafferty thereafter filed for post-conviction relief. The post-conviction court entered a final order on November 29, 2005, dismissing Lafferty's petition with prejudice and denying post-conviction relief. Lafferty appealed the post-conviction court's decision to the Utah Supreme Court, which affirmed that Lafferty had failed to raise a genuine issue for a new trial in his post-conviction petition. *Lafferty v. State,* 175 P.3d 530 (Utah 2007). Lafferty now petitions this court pursuant to 28 U.S.C. § 2254, challenging his convictions and sentences, including his sentence of death, as being in violation of his rights under the United States Constitution.

## III.    ANALYSIS

### A.  Standard of Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996. Under AEDPA, federal habeas relief on claims adjudicated on the merits cannot be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). First, "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

Second, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States

Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. The state court can therefore run afoul of either prong only if the Supreme Court has clearly answered the question at issue. *See Wright v. Van Patten*, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented . . . 'it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law."'" (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006))).

### B. Twenty-five claims that the state post-conviction court found to be procedurally barred, although technically exhausted, are procedurally defaulted in this court

Twenty-five of Lafferty's state post-conviction claims were held to be procedurally barred in state court because they could have been raised on direct appeal. *Lafferty v. State,* 175 P.3d 530, 540-42 (Utah 2007). Lafferty now combines those claims in his federal petition as claims 13, 18, 19, 20, 23, 24, 25, 31, and 32. Lafferty asserts that each of these claims are exhausted and cites to that portion of the Utah Supreme Court's holding affirming the denial of the claims as procedurally barred. *See* Doc. No. 39 at 143 (Claim 13), 164 (Claim 18), 168 (Claim 19), 171 (Claim 20), 184 (Claim 23), 187 (Claim 24), 190 (Claim 25), 240 (Claim 31), 243 (Claim 32) (all citing to pages 14-21 of his appellate brief which discusses the procedurally barred claims). These claims are deemed to be technically exhausted because the state procedural bar prevents Lafferty from properly exhausting them. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there

are no state remedies any longer 'available' to him." *Coleman v. Thompson,* 501 U.S. 722, 732

(1991) (citing 28 U.S.C. § 2254(b)).

However, even though these claims are deemed exhausted for purposes of this court's

review, they are nevertheless considered to be procedurally defaulted for purposes of federal

habeas relief. As the Tenth Circuit stated in *Thomas v. Gibson,* 218 F.3d 1213(10th Cir. 2000):

> [T]he Supreme Court has held that if a petitioner "failed to exhaust state remedies
> and the court to which the petitioner would be required to present his claims in
> order to meet the exhaustion requirement would now find the claims procedurally
> barred" the claims are considered exhausted and procedurally defaulted for
> purposes of federal habeas relief. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1,
> 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

*Id.* at 1221. Accordingly, Lafferty has defaulted these claims by failing to raise them in state

court.

### C. Analysis of the remaining constitutional claims that are exhausted and not procedurally barred

Lafferty has withdrawn claims 3, 4, 5, 7, part of 8, part of 10, part of 11, 26, 29, and 33.

As stated in the foregoing section, claims 13, 18, 19, 20, 23, 24, 25, 31, and 32 are procedurally

defaulted and cannot be considered by this court. The court will now consider the merits of the

remaining claims: 1, 2, 6, part of 8, 9, part of 10, part of 11, 12, 14, 15, 16, 17, 21, 22, 27, 28, 30,

34, and 35.


FIRST CLAIM FOR RELIEF

THE STATE OF UTAH HAD NO JURISDCTION TO RE-PROSECUTE, RE-CONVICT AND
RE-SENTENCE RONALD LAFFERTY TO DEATH. ALL STATE COURT PROCEEDINGS
THAT TOOK PLACE IN RONALD LAFFERTY'S RETRIAL WHICH RESULTED IN HIS
RE-CONVICTION AND RE-SENTENCE TO DEATH ARE LEGALLY VOID

### 1. Exhaustion

The parties agree that this claim for relief has been exhausted. *See* Doc. No. 69, Exhibit K

at 5. Lafferty raised this claim for the first time in a petition for rehearing in the Utah Supreme

Court following the denial of his state post-conviction petition. The court denied the petition for rehearing without issuing an additional opinion. *See* Doc. No. 69-7, Exhibit F (Order dated 4 January 2008).

### 2. The Merits

Lafferty was originally tried and convicted of two capital felonies and sentenced to death in 1985. His conviction and sentence were affirmed on direct appeal to the Utah Supreme Court. In 1988, Lafferty filed a petition for writ of habeas corpus in federal district court challenging his two state-court convictions for capital murder and corresponding death sentence. *See Lafferty v. Cook,* 949 F.2d 1546, 1548 (10th Cir. 1992). The district court stayed execution of the death sentence while it considered the petition. The district court denied the petition in November, 1989. *Lafferty,* 949 F.2d at 1548. On January 18, 1990, the court lifted the execution stay and indicated that any application for a further stay should be addressed by the Tenth Circuit. Doc. No. 74.

On February 12, 1990, the Tenth Circuit issued an order granting Lafferty's application for a stay. *See* Doc. No. 69-8, Exhibit G (Order dated 12 February 1990). The order stated that "[e]xecution of appellant's sentence of death is stayed pending further order of this court." *Id.*

On December 9, 1991, the Tenth Circuit granted the writ based on the trial court's use of an improper standard in finding Lafferty competent to stand trial, holding: "we grant the writ, and vacate the conviction and sentence. The state is of course free to retry Lafferty." *Lafferty,* 949 F.2d at 1556. The following day, December 10, 1991, the Tenth Circuit entered its Judgment, which states:

> This cause came on to be heard on the record on appeal from the United States
> District Court for the District of Utah, and was argued by counsel.

> Upon consideration whereof, it is ordered that the petition is granted and that the judgment and conviction of that court is vacated. The cause is remanded to the United States District Court for the District of Utah for further proceedings in accordance with the opinion of this court.

*See* Doc. No. 69-9, Exhibit H (Judgment).

On May 26, 1992, the Tenth Circuit sent a copy of its Opinion and Judgment to the district court, stating that the two documents "constitute the mandate in the subject case," and that "the mandate shall be filed immediately in the records of the trial court." *See* Doc. No. 69-10, Exhibit I (Letter dated 26 May 1992). On June 1, 1992, the district court filed the Tenth Circuit's mandate in its records. *See* Doc. No. 69-11 Exhibit J (Notice of Filing and Docketing of Mandate). The record in the original federal habeas case does not show that the district court entered any additional orders regarding the petition.

In 1996, the State retried Lafferty. A jury again convicted him of two counts of capital murder and sentenced him to death. *See Lafferty,* 20 P.3d 342, 355 (Utah 2001). In 2001, the Utah Supreme Court affirmed Lafferty's convictions and death sentence. *Id.* at 381. In 2002, Lafferty filed a state petition for post-conviction relief challenging his convictions and death sentence. *See Lafferty,* 175 P.3d at 533. The state post-conviction court denied the petition and the Utah Supreme Court affirmed. *Id.* at 545.

### a. The Writ

Lafferty argues that because the Tenth Circuit granted his petition for writ of habeas corpus without conditions, vacated his conviction and sentence and directed the district court to hold further proceedings consistent with the granting of the writ, the district court was required to take action to effectuate the mandate of the Tenth Circuit. And because the district court did not hold any hearings or issue any orders to effectuate the mandate of the Tenth Circuit, and no court took any action lifting the stay of execution that was issued by the Tenth Circuit while it

considered his case, Lafferty asserts that "the State of Utah never regained jurisdiction to proceed with the re-prosecution of Lafferty." Doc. No. 39 at 34. Thus, according to Lafferty, his re-prosecution, re-conviction, and re-sentencing to death were all void.

Lafferty must demonstrate that the Utah Supreme Court's denial of his petition for rehearing on this issue was contrary to or an unreasonable application of United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). He has failed to do so. He cites no Supreme Court authority to support his claim that alleged procedural errors by the district court following the Tenth Circuit's grant of habeas relief deprived Utah of jurisdiction to retry him. He also cites no Supreme Court case holding that a federal habeas court must transfer jurisdiction of a state criminal case back to the state courts before the State may retry a petitioner who has been granted a new trial.

In granting Lafferty's petition for writ of habeas corpus, the Tenth Circuit stated: "Accordingly we grant the writ, and vacate the conviction and sentence. The state is of course free to retry Lafferty." *Lafferty,* 949 F.2d at 1556. Lafferty argues that this constituted an unconditional grant of the writ, and that under the terms of the Tenth Circuit's mandate, and 28 U.S.C. § 2243, the district court was required "to take action to effectuate that mandate of the court of appeals." Doc. No. 39 at 39. Lafferty continues, "the district court had a duty to issue an order directing that Lafferty be released, either unconditionally or conditionally, or to issue an order directing the state to show cause why such a release order should not be issued." *Id.*

While it is true that the district court did not issue an order remanding the case to the state or purporting to transfer jurisdiction back to the state, it was not required to do so. The district court did all that the mandate required, which was to file the Tenth Circuit's Opinion and Judgment in the record. The Tenth Circuit's Judgment states, "it is ordered that the petition is

granted and that the judgment and conviction . . . is vacated." Doc. No. 69, Exhibit H. The Tenth

Circuit's May 26, 1992 letter to the district court enclosed the Opinion and Judgment and stated

that these two documents "constitute the mandate in the subject case." Doc. No. 69, Exhibit I.

The letter also noted that, "[b]y direction of the court, the mandate shall be filed immediately in

the records of the trial court." *Id.* Neither the letter, the Opinion, nor the Judgment directed the

district court to take any further action beyond filing the mandate. The district court filed the

mandate in its records, and thus did all it was required to do. *See* Doc. No. 69, Exhibit J.

### b. The Stay

Lafferty argues that because the district court did not issue an Order giving effect to the

Tenth Circuit's mandate, the federal habeas proceedings were never concluded and the Tenth

Circuit's stay of the proceedings was still in effect at the time the state re-prosecuted Lafferty,

and thus the subsequent state prosecution was null. This argument has no merit. As stated above,

the district court did all that it was required to do to give effect to the Tenth Circuit's mandate

when it filed the Tenth Circuit's Opinion and Judgment, which clearly stated that the writ was

granted. The State made no attempt to enforce the vacated judgment and sentence. Rather, the

State retried Lafferty, as the Tenth Circuit expressly recognized that it could. *See Lafferty,* 949

F.2d at 1556. The stay expired on its own terms when the court issued its Opinion and Judgment.

Lafferty has failed to establish that the Utah Supreme Court contradicted or unreasonably

applied United States Supreme Court precedent in denying his petition for rehearing. Therefore,

the first claim for relief is denied.

SECOND CLAIM FOR RELIEF

THE STATE'S RETRIAL OF LAFFERTY AFTER THE TENTH CIRCUIT COURT OF
APPEALS VACATED HIS CONVICTION AND SENTENCE VIOLATED THE FEDERAL
DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT

### 1. Exhaustion

The State argues that this claim is not exhausted because Lafferty is now raising the double jeopardy claim on a "different ground" than he did before the Utah Supreme Court. This court has previously concluded, however, that "[b]ased on Lafferty's argument regarding double jeopardy on direct appeal, as well as the Utah Supreme Court's resolution of it . . . Lafferty's double jeopardy claim is exhausted." Doc. No. 370 at 6. The court noted that "[Lafferty] urges this court to view the use of the wrong competency standard not as mere 'trial error' as the Utah Supreme Court concluded, but instead as equivalent to 'insufficient evidence.' The Utah Supreme Court chose not to find that equivalency. The issue is now properly before this court." *Id.*

### 2. The Merits

Lafferty appears to argue in his petition that under *Burks v. United States,* 437 U.S. 1, 16-18 (1978), the Tenth Circuit's reversal of his conviction amounted to a finding of evidentiary insufficiency which is equivalent, for double jeopardy purposes, to a verdict of acquittal. In denying Lafferty's double jeopardy claim, the Utah Supreme Court held:

> [W]e have held that "double jeopardy does not generally bar a second trial when a conviction was successfully vacated on appeal or by motion for a new trial based on errors in the first" (citation omitted). Similarly, section 76-1-405 of the Utah Code provides that "[a] subsequent prosecution for an offense shall not be barred ... [when t]he former prosecution result[s] in a judgment of guilt [and is] held invalid in a subsequent proceeding on writ of habeas corpus...." Utah Code Ann. § 76-1-405 (1995). That is the case here. The Tenth Circuit vacated the conviction of the first trial court on the ground that the court had failed to apply the proper standard in determining competency. *See* Lafferty II, 949 F.2d 1546, 1556 (10th Cir. 1991). Retrying a case when a "trial error" has occurred does not place the defendant in double jeopardy (citation omitted). Retrial was proper on this ground alone, regardless of the prosecutorial misconduct, and neither the State nor defendant should be denied the right to a fair, error-free determination; " 'the double jeopardy clause may not deny either side that right' " (citation omitted).

*Lafferty,* 20 P.3d at 380.

Lafferty argues that jeopardy attaches and bars retrial if a conviction is reversed because the evidence was legally insufficient. He claims that for double jeopardy purposes, reversal on such ground is equivalent to a verdict of acquittal. *See Burks v. U.S.,* 437 U.S. 1, 16-18. Lafferty then claims that his conviction was reversed based on legally insufficient evidence, because his lack of competency prevented his attorney from presenting evidence that would have resulted in an acquittal, or at least a conviction on a lesser offense. This is mere speculation and is unsubstantiated by the record. The court agrees with the Utah Supreme Court that the use of the wrong competency standard was mere trial error and not equivalent to insufficient evidence. The second claim for relief is denied.

## SIXTH CLAIM FOR RELIEF

THE PROSECUTOR'S COMMENTS WERE IMPROPER, MISSTATED THE LAW AND CONSTITUTED PROSECUTORIAL MISCONDUCT, IN VIOLATION OF LAFFERTY'S FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS

### 1. Exhaustion

This court ruled that Claim 6, including the additional examples of prosecutorial misconduct during closing arguments, is the same claim that was presented in state court, and is accordingly exhausted. *See* Doc. No. 370 at 6-8.

### 2. The Merits

Lafferty claims that prosecutorial misconduct during the closing argument of his retrial violated his constitutional rights. Lafferty objects to (1) prosecutorial references to "other bad acts" evidence and the implication that Lafferty was a threat to law enforcement, (2) the use of "fabricated evidence" to support the testimony of Charles "Chip" Carnes, and (3) statements that Lafferty should receive the death penalty for killing an infant. Lafferty argues that the

cumulative effect of the prosecution's improper comments and acts violated his constitutional right to a fair trial.

On direct appeal, the Utah Supreme Court concluded that the prosecutor's closing argument did not render Lafferty's trial unfair in violation of his right to due process because the prosecutor merely reiterated facts that the jury had already heard and that were relevant to determining Lafferty's sentence. *Lafferty,* 20 P.3d at 369. Lafferty argues that the Utah court was wrong when it applied the standard of whether "the error is substantial and prejudicial such that there is a reasonable likelihood that in [their] absence, there would have been a more favorable result for the defendant." *Lafferty,* 20 P.3d at 369. He says that the standard it should have applied is whether the prosecutor's inappropriate comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974).

This bare comparison does not show that the Utah court contradicted or unreasonably applied controlling Supreme Court authority. Lafferty provides no analysis and cites no case demonstrating that the two standards conflict with each other. He also fails to recognize that the Utah court held that the prosecutor made no improper argument. *Lafferty,* 20 P.3d at 369. Proper argument cannot "infect the trial with unfairness." *See Donnelly*, 416 U.S. at 643.

The Utah court, like the United States Supreme Court in *Donnelly,* looked to the fairness of the trial. The Utah court opened its analysis by recognizing the issue to be whether the prosecutor's comments denied Lafferty a fair trial. *Lafferty,* 20 P.3d at 369. The court concluded that the prosecutor's statements were "merely reiterations of facts in evidence and inferences drawn from them and would not have changed the outcome of the trial." *Id.*

In *Darden v. Wainwright,* 477 U.S. 168 (1986), the United States Supreme Court addressed a prosecutorial misconduct claim involving improper comments by the prosecutor. The Court noted the following: "[W]e agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial. The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *Darden,* 477 U.S. at 181-82. The Court concluded that although the prosecutor's closing comments "undoubtedly were improper," and even if they were "undesirable or even universally condemned," they nevertheless did not warrant reversal. *Id.* Similarly, in this case the Utah court considered the prosecutor's argument, and determined that it "[did] not rise to the level of prosecutorial misconduct or warrant a reversal of defendant's conviction and sentence." *Lafferty,* 20 P.3d at 368. Lafferty has not established that the Utah court contradicted or unreasonably applied any Supreme Court authority. The sixth claim for relief is denied.

EIGHTH CLAIM FOR RELIEF

LAFFERTY WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL BECAUSE HIS TRIAL AND APPELLATE COUNSEL OPERATED UNDER AN ACTUAL CONFLICT OF INTEREST

**1. Exhaustion**

This court has ruled that the portion of Claim 8 that deals with Mr. Killpack's conflict of interest is not exhausted and is, therefore, procedurally defaulted. Doc. No. 370 at 13. Lafferty has withdrawn that portion of this claim. Doc. No. 407 at 3-4. The court found, however, that the claim against Mr. Esplin is exhausted. The Utah Supreme Court found that there was "no factual support to show" that Lafferty was harmed by Mr. Esplin's previous representation of his brother. *See Lafferty*, 175 P.3d at 544.

## 2. The Merits

Lafferty claims that he was denied the effective assistance of counsel at trial and on appeal because his attorney, Michael Esplin, operated under an actual conflict of interest, thus violating Lafferty's constitutional rights. Lafferty has the burden to establish that the Utah Supreme Court contradicted or unreasonably applied controlling United States Supreme Court authority in denying his claim. The court finds that he has not met that burden.

Lafferty contends that he was denied his Sixth Amendment right to conflict-free counsel because his attorney at his 1996 re-trial had been appointed as standby counsel for Lafferty's brother and co-defendant, Dan, at Dan's 1985 trial. Dan was convicted of capital murder and received two life sentences. *Lafferty,* 749 P.2d at 1241. Dan did not appeal.

A jury later convicted Ron Lafferty of capital murder and sentenced him to death. *Id.* Mr. Esplin did not represent Lafferty at trial, but he did represent him on direct appeal, where his conviction and sentence were affirmed. *Id.* at 1239-41. On federal habeas review, the Tenth Circuit granted Lafferty's petition for habeas relief, and ordered his conviction and death sentence vacated. *Lafferty v. Cook,* 949 F.2d 1546 (10th Cir. 1991), *cert. denied,* 504 U.S. 911 (1992). The State retried Lafferty in 1996, and Mr. Esplin was one of the attorneys who represented him. Prior to trial, and on the State's motion, the 1996 trial court inquired into the possibility that Mr. Esplin's involvement in Dan's 1985 case would create a conflict of interest if Dan were called to testify in Lafferty's 1996 retrial. The trial court held two hearings and heard from Mr. Esplin, Lafferty and Dan on the issue. *See generally,* R. 4231-27, 5427 (Tr. 19 October 1994), 5428 (Tr. 28 August 1995).[1]

---

[1] The court will refer to the record in Lafferty's underlying criminal case, Utah Fourth District Court, Utah County case no. 841409309, with an "R" and the Bates-stamped page number, for example, "R. 4231." A complete copy of this record is filed in conjunction with Doc. No. 69, and includes copies of all pleadings and available transcripts in the case, which includes both the 1985 and 1996 trials.

Mr. Esplin told the 1996 trial court that because Dan insisted on his Sixth Amendment right to represent himself, Mr. Esplin served primarily as "advisory" or "standby" counsel during the 1985 proceedings. R. 5427:5-10. During that time, Dan shared no confidences about the murder's actual events or any factual matter, and Mr. Esplin did not ask about them, even during the brief periods when he was appointed as counsel rather than as advisory counsel. The trial court acknowledged that Mr. Esplin adequately explained that he had taken no confidences from Dan. *Id.* at 5427:10-13. Mr. Esplin also told the 1996 trial court that after Dan was convicted and sentenced, his only contact with Dan was his 1996 visit to Dan about Ron's retrial. He anticipated no involvement on Dan's behalf before the Board of Pardons and Parole or in federal habeas proceedings. He stated that after his involvement with Dan ended, he had represented only Lafferty through his first direct appeal and first federal habeas proceeding, which resulted in federal habeas relief for Lafferty. *Id.* at 5427:11-15. Mr. Esplin stated that his loyalty was to Lafferty only, assuring the trial court that his prior involvement as Dan's advisory counsel during Dan's trial would not affect a decision whether to call Dan to testify at either phase of Lafferty's 1996 retrial. *Id.* at 5427:13-15.

The trial court next questioned Lafferty, who repeatedly stated that he saw no conflict, but spent most of his time insisting that he would be in charge of his defense, and that he accepted counsel only because he needed someone with access to the court. *Id.* at 5427:24-35. Dan, who had independent counsel appointed for the 1996 conflict hearings, was questioned and under oath agreed to be a witness and to allow Mr. Esplin to continue to represent Lafferty. He agreed that he understood that Mr. Esplin's duty would be to examine and cross-examine him vigorously, including about his truthfulness, and he consented to that. He also agreed that he understood that he had the right not to have his former attorney question him. R. 5428.

After the hearings, the 1996 trial court concluded that there was no actual conflict of interest that would disqualify Mr. Esplin, and that Dan had consented to Mr. Esplin representing Lafferty.

During the guilt phase of Lafferty's 1996 trial, Lafferty's defense team called Dan to testify. R. 5448:119-242 and R. 5449:5-157. Before they called him to testify, however, the State had put on considerable independent evidence that showed that Lafferty masterminded the murders of Brenda and Erica, insisted that they had to die by having their throats slashed, beat Brenda, and killed Brenda himself. Doc. No. 69 at 67-70 (citing R. 5444:45-49, 55-60, 119-20, 134-137; 5445: 9-15, 18-26, 29-32, 58-64, 131-133, 153; 5446:13-15, 19-43, 78-84, 87-88).

During Lafferty's trial, Dan admitted that he actually killed both Brenda and Erica, and Mr. Esplin emphasized that admission in the guilt phase closing argument. He pointed out that, under Utah law, Lafferty could only be guilty as an accomplice. He argued that Dan's testimony that Lafferty said, "Let's get out of here" before Dan murdered Brenda and Erica demonstrated that Lafferty lacked the requisite mental state for capital murder. He also relied on Dan's testimony (as well as other evidence of Lafferty's history before he began to espouse Dan's beliefs) to portray Lafferty as having fallen under Dan's control. R. 5454:33-35.

At the penalty phase, co-defense counsel relied on Dan's testimony to argue against a death sentence for Lafferty. She argued that it would not be appropriate to sentence Lafferty to death when Dan, who admitted killing both victims, got only a life sentence. She also relied on Dan's testimony to argue that if things had been left to Lafferty, Brenda would have been injured, but alive, but that Dan could not be dissuaded from carrying out the murders. R. 5457:8-50. The jury nevertheless convicted Lafferty and sentenced him to death. *Lafferty,* 20 P.3d at 355.

Lafferty filed a petition for state post-conviction relief, and claimed, among other things, that he lacked the mental competence to waive Mr. Esplin's purported conflict of interest during the 1996 trial. The state post-conviction court rejected Lafferty's claim because he "fail[ed] to refer to any decision made or trial strategies relied upon by trial counsel that actually undermined [Lafferty's] interests in favor of [Dan's]." PCR 431.[2] The court also reasoned that "merely pointing out that [Lafferty's] trial counsel also represented his co-defendant on identical charges of capital homicide in a separate trial that occurred eleven years prior to [Lafferty's] trial is insufficient to show that trial counsel was actively representing conflicting interests that adversely affected counsel's performance in [Lafferty's] trial." PCR 431.

Lafferty timely appealed. The Utah Supreme Court said that the conflict-of-interest standard required Lafferty to show that an actual conflict of interest had adversely affected Mr. Esplin's performance, forcing him to choose between advancing Dan's interests and those of Lafferty. *See Lafferty,* 175 P.3d at 544. The court then stated that in cases where an actual detrimental conflict is established, prejudice is presumed. Applying this standard, the Utah Supreme Court held that Lafferty had demonstrated no violation of his Sixth Amendment right to conflict-free counsel. The court reasoned that because Dan's trial had concluded by the time Mr. Esplin was appointed to represent Lafferty on retrial, no conflict existed in the representation. *Id.* The court stated that "the serial representation at issue here is not enough to establish an unconstitutional conflict of interest." *Id.*

In order to succeed on a Sixth Amendment conflict-of-interest claim, a convicted person must prove that his counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington,* 466

---

[2] The court will cite to the record of Lafferty's state post-conviction proceedings, Utah Fourth Judicial District, Utah County case no. 020404472, as "PCR" and the Bates-stamped page numbers, for example PCR 431. A copy of this record is filed in conjunction with Doc. No. 69.

U.S. 668, 692 (1984) (internal citation omitted); *United States v. Alvarez,* 137 F.3d 1249, 1251

(10th Cir. 1998). The Tenth Circuit has explained that this requires the person to prove that

counsel was in a position that would force him to make choices advancing other interests to the

detriment of his, and that counsel actually did so. *Alvarez,* 137 F.3d at 1252. Lafferty has not met

his burden of demonstrating that the Utah courts contradicted or unreasonably applied United

States Supreme Court authority. 28 U.S.C. § 2254(d); *see, e.g., Miller v. Mullen,* 354 F.3d 1288,

1291 (10th Cir. 2004).

Lafferty never identified an actual conflict of interest. His argument that in 1996, when

Mr. Esplin represented Lafferty, Dan still could have filed a federal habeas petition, in no way

proved to the Utah court that Mr. Esplin still represented Dan in 1996. In fact, the undisputed

record establishes, and the trial court found, that Mr. Esplin was relieved of representing Dan at

the end of Dan's trial and that Mr. Esplin had no ongoing duty or plans to represent Dan in any

federal habeas proceedings.

Lafferty bases his conflict-of-interest claim on allegations that Mr. Esplin elicited

testimony from Dan that was more harmful than helpful to Lafferty. But, as the Utah Supreme

Court held, "Lafferty proffered no factual support to show that trial counsel made any decisions

or relied on any trial strategies that advanced Dan's interests to Lafferty's detriment." *Lafferty,*

175 P.3d at 544. In fact, the court noted, Mr. Esplin did the opposite: he "called Dan as a witness

and obtained an admission from Dan that he, rather than Lafferty, physically committed both

murders. Counsel then relied on Dan's testimony to vigorously argue that Lafferty should not

suffer a more severe punishment than Dan, who had not received the death penalty." *Id.*

The Utah Supreme Court's holding that "the serial representation at issue here is not

enough to establish an unconstitutional conflict of interest," *Lafferty,* 175 P.3d at 544, did not

contradict or unreasonably apply controlling Supreme Court authority. The United States

Supreme Court has held that it is an "open question" whether the conflict-of-interest analysis

applies to successive representation cases such as Lafferty's. *See Mickens v. Taylor*, 535 U.S.

162, 175-76 (2002). If it is an "open question" under Supreme Court precedent, then the Utah

court could not have contradicted controlling Supreme Court precedent when it held that in this

case it did not. For the above reasons, the eighth claim for relief is denied.


## NINTH CLAIM FOR RELIEF

LAFFERTY RECEIVED INEFFECTIVE ASSISTANCE AT TRIAL AND SENTENCING IN VIOLATION OF HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS

### 1. Exhaustion

This court found Claim 9 to be exhausted. Doc. No. 370 at 8-9. The court stated,

"[c]onsidering the additional allegations of trial counsel's deficiencies does not fundamentally

alter the legal claim before the court. *See Vasquez v. Hillery,* 474 U.S. 254, 260 (1986).

Moreover, the cumulative effect of a trial counsel's errors may undermine confidence in the

outcome of a trial and constitute ineffective assistance of counsel even when particular instances,

taken in isolation, do not." Doc. No. 370 at 9.

### 2. The Merits

To succeed on this claim, Lafferty must prove two elements: (1) deficient performance by

trial counsel; and (2) prejudice. *See, e.g., Strickland v. Washington,* 466 U.S. 668, 692 (1984);

*Bullock v. Carver,* 297 F.3d 1036, 1043-44 (10th Cir.), *cert denied,* 537 U.S. 1093 (2002). To

prove deficient performance, Lafferty must prove that trial counsel's representation was

objectively unreasonable. *Strickland,* 466 U.S. at 688; *Bullock,* 297 F.3d at 1044. He must

overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Strickland*, 466 U.S. at 689. The *Strickland* Court recognized that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* Thus in assessing the choices counsel made, under *Strickland* the Utah court had to "apply[] a heavy measure of deference to counsel's judgments." *Id.* at 690-91.

To prove prejudice, Lafferty must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Lafferty argues that this claim ultimately comes down to "trial counsel's failure to adequately investigate and present evidence of Lafferty's background and family history during the penalty phase of the trial, as well as counsel's failure to utilize the evidence and testimony that was presented during the merits phase in support of the case in mitigation during the penalty phase." Doc. No. 349 at 40. He argues that counsel merely made cursory conclusions during her closing argument, without pointing to specific evidence or explaining to the jury how the evidence presented during the merits phase was relevant to their decision.

Lafferty is also concerned that trial counsel did not call any of the expert witnesses from the trial phase to explain to the jurors how the evidence that they rejected during the merits phase could still be relevant and compelling evidence during the sentencing phase. Instead, according to Lafferty, "counsel only briefly referenced this evidence in her opening statement and closing argument, making inexpert conclusions that were not in evidence and therefore could not be considered by the jurors." Doc. No. 349 at 41.

The Utah Supreme Court applied *Strickland* principles to Lafferty's ineffective assistance claims and rejected the claims on the merits. To obtain relief, Lafferty must demonstrate that the Utah Supreme Court contradicted or unreasonably applied controlling United States Supreme Court precedent when it held that he had not met his burden on the *Strickland* elements. 20 U.S.C. § 2254(d); *see, e.g., Miller v. Mullen,* 354 F.3d 1288, 1291 (10th Cir. 2004). After careful consideration of all of Lafferty's allegations of ineffective assistance, the court finds that he has not done so. Although Lafferty suggests a number of ways that counsel could have improved their performance during the penalty phase, he does not overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. He has also failed to demonstrate a reasonable probability "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In regards to most aspects of this claim, Lafferty has not cited any authority and has offered little or no explanation about how the Utah courts' reasoning conflicted with governing Supreme Court authority. Claim 9 is denied.

## TENTH CLAIM FOR RELIEF

**LAFFERTY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL ON DIRECT APPEAL IN VIOLATION OF HIS FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS**

### 1. Exhaustion

In his tenth claim for relief, Lafferty originally offered fourteen examples of direct appeal counsel's failure to provide effective assistance. In his Notice of Withdrawal of Claims, he withdrew all but two (1 and 3) of these bases for error, and then requested that the court consider the merits of the two remaining bases. Doc. No. 407 at 6. Previously, however, in his Reply in

Support of Amended Petition for Writ of Habeas Corpus, Lafferty noted that the State had conceded exhaustion on point 1, but then stated, "Lafferty withdraws this aspect of the claim." Doc. No. 345 at 69. Therefore the only remaining exhausted basis for error is point 3, that direct appeal counsel performed deficiently when they failed to appeal the denial of Lafferty's pre-trial motion to change the venue of the trial.

### 2. The Merits

Lafferty argued in point 3 of this claim that his appellate counsel was ineffective for failing to appeal the denial of his motion to change venue. Doc. No. 39 at 120. He argued that he was prejudiced because a large number of prospective jurors had already determined that he was guilty based upon their exposure to press coverage. Doc. No. 39 at 243-49. In denying this claim, the Utah Supreme Court noted that, "Lafferty points to no evidence of a tainted jury," and, "[w]ithout evidence of prejudice, Lafferty cannot show that counsel was deficient for over-looking an obvious argument that probably would have resulted in reversal on appeal." *Lafferty,* 175 P.3d at 540. The court continued:

> In fact, on his first appeal, Lafferty's counsel, the same counsel who represented him on his second direct appeal, did challenge the denial of his motion to change venue. This court rejected that challenge because the totality of the circumstances provided no basis for concluding that the trial court should distrust the jurors' assurances of impartiality. And Lafferty provides no reason why counsel was deficient for failing to again pursue this unsuccessful claim on his second appeal.

*Id.*

In arguing that the Utah Supreme Court contradicted or unreasonably applied governing United States Supreme Court authority, Lafferty cites a number of United States Supreme Court cases, and then states, "[t]here is nothing in these cases to indicate that it would ever be proper to deny a venue challenge based on a denial of a change of venue in a petitioner's prior trial. Each of these cases requires a court to assess the facts and circumstances relevant to the trial that is the

subject of the claim." Doc. No. 349 at 71. However, this misstates the Utah Supreme Court's holding. The Utah court recognized that under its precedent, to have succeeded in appealing the denial of the venue change, appellate counsel would have had to show that ultimately Lafferty was not tried by "a fair and impartial jury." *Lafferty,* 175 P.3d at 540. The court found that Lafferty had presented no evidence of a tainted jury, so he had not shown that direct appeal of the venue-change issue had a reasonable probability of success.

The court also noted that Lafferty was represented by the same counsel who had represented him in his first direct appeal, where counsel had raised the venue-change issue. The claim had failed then because the court held that "the totality of the circumstances provided no basis for concluding that the trial court should distrust the jurors' assurances of impartiality." *Id.* In the state post-conviction appeal, the Utah Supreme Court found that Lafferty had shown no reason why counsel was deficient for not pursuing a claim on his second appeal that had been unsuccessful in his first appeal. Lafferty cites no United States Supreme Court authority that conflicts with this reasoning and holding.

Lafferty cites *Irvin v. Dowd,* 366 U.S. 717 (1961), in which the United States Supreme court held that the jury was not impartial according to constitutional standards, and therefore the prisoner was entitled to a new trial. Lafferty asserts that similar to *Irvin*, he has demonstrated actual harm because jurors who were seated in his case were exposed to the pervasive media about his case and had already established their belief in his guilt prior to the trial. However, the *Irvin* Court said: "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in

court." *Id.* at 723. The Utah Supreme Court's decision does not contradict or unreasonably apply this governing United States Supreme Court authority. The tenth claim for relief is denied.

ELEVENTH CLAIM FOR RELIEF

LAFFERTY RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL ON STATE POST-CONVICTION REVIEW IN VIOLATION OF HIS FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENT RIGHTS

TWELFTH CLAIM FOR RELIEF

LAFFERTY WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DURING THE STATE POST-CONVICTION RELIEF PROCEEDING DUE TO THE INADEQUATE FUNDING PROVIDED TO HIS STATE POST-CONVICTION COUNSEL AND/OR DUE TO COUNSEL'S FAILURE TO ADEQUATELY REQUEST AND/OR UTILIZE AVAILABLE FUNDING IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

### 1. Exhaustion

In Claim 11, Lafferty argues that he received ineffective assistance of counsel during his post-conviction review, and he lists a number of his counsel's alleged failures. Doc. No. 39 at 130. This court has held that "Claim 11 is not exhausted except as to the ABA Guidelines and funding and time limitations." Doc. No. 370 at 19. As a consequence, Lafferty has withdrawn all other aspects of this claim from his federal habeas petition. Therefore the court will consider only the specific issue of counsel's alleged ineffective assistance for failure to meet the ABA Guidelines because of funding and time limitations.

In Claim 12, Lafferty argues that he was denied effective assistance of counsel during the state post-conviction proceedings because sufficient state funding was not available to his counsel, and because his counsel failed to take advantage of the funding that was available. Doc. No. 39 at 136. The Utah Supreme Court found that post-conviction counsel failed to adequately plead and support Lafferty's claim. Lafferty now argues that this finding involved an

unreasonable application of clearly established federal law and an unreasonable determination of the facts. Based on those arguments, the claim is properly before the court. Doc. No. 370 at 9.

## 2. The Merits

In Claims 11 and 12, Lafferty asserts that he had a federal constitutional right to the effective assistance of state post-conviction counsel. The only claim of ineffective assistance of state post-conviction counsel that he raised before the Utah Supreme Court was that inadequate funding prevented his state post-conviction counsel from satisfying the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.

Lafferty has not met his AEDPA burden to establish that the Utah Supreme Court contradicted or unreasonably applied controlling United States Supreme Court authority in rejecting that claim. The United States Supreme Court has consistently held, and recently reaffirmed, that there is no federal constitutional right to the assistance of state post-conviction counsel. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 755 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings"); *Davila v. Davis,* 137 S. Ct. 2058, 2060 (2017) ("the Constitution does not guarantee the right to counsel" for state post-conviction proceedings).

Even if Lafferty had a constitutionally protected right to the effective assistance of post-conviction counsel, the Utah Supreme Court contradicted no governing authority in holding that Lafferty had proven no violation of that right. Lafferty has not established that his post-conviction counsel was ineffective. Stating that he was does not make it so. At no point does Lafferty argue, let alone establish, that his post-conviction counsel failed the *Strickland* test. *Strickland v. Washington,* 466 U.S. 668 (1984). Even now Lafferty provides no evidence of how

the alleged funding limitations adversely affected his case. He proffers no additional evidence that post-conviction counsel failed to uncover because of allegedly deficient funding.

The Utah Supreme Court also reasonably applied relevant United States Supreme Court precedent when it held that the mere failure to satisfy the ABA guidelines, without more, is insufficient to demonstrate ineffective assistance of counsel. *Lafferty,* 175 P.3d at 542. The Supreme Court has held that the ABA Guidelines are "only guides" in assessing the reasonableness of trial counsel's performance. *Strickland,* at 688. They do not define the scope of constitutionally reasonable representation:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Id.* at 688-89. The Utah Supreme Court reasonably applied United States Supreme Court precedent in rejecting Lafferty's ineffective-assistance claim based on counsel's alleged failure to meet the ABA Guidelines due to funding and time limitations. The eleventh and twelfth claims for relief are denied.

FOURTEENTH CLAIM FOR RELIEF

THE TRIAL COURT VIOLATED LAFFERTY'S EIGHTH AND FOURTEENTH AMENDMENT RIGHTS BY REFUSING TO GIVE THE REQUESTED JURY INSTRUCTION THAT THE JURY COULD CONSIDER SYMPATHY OR MERCY IN REACHING ITS DECISION DURING THE PENALTY PHASE

**1. Exhaustion**

The parties agree that this claim for relief has been exhausted. *See* Doc. No. 69, Exhibit K at 5. The claim was presented to the Utah Supreme Court, which rejected it on the merits.

## 2. The Merits

Lafferty claims that the trial court erroneously denied his "mercy" instruction and erroneously instructed the jury not to base its sentencing decision on "mere" emotion. During the sentencing phase, the trial court instructed the jury that mitigation "means any factor which gives rise to a doubt that the death penalty may be appropriate." R. 5090 (Instruction No. 7). The court explained that "[a] mitigating factor may relate to the crime itself or to Lafferty's background or personal circumstances." After instructing the jury on Utah's five specific statutory mitigating circumstances, and the statutory catch-all of "[a]ny other fact in mitigation of the penalty," the trial court continued: "But you should not limit your consideration of mitigating circumstances to only those specific factors. You may consider any other circumstances, relating to the case of the defendant, Lafferty, as reasons for not imposing the death sentence." *Id*.

Lafferty requested that the trial court instruct the jurors that: "Your feelings of pity, mercy, or sympathy regarding the defendant are proper considerations in determining the appropriate penalty." R. 5974. The trial court denied the requested instruction, and instead instructed the jurors:

> You are to be governed solely by the evidence introduced in this trial and the law as stated by me. The law forbids you to be governed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

R. 5071 (Instruction No. 3).[3]

In rejecting Lafferty's claim on direct appeal, the Utah Supreme Court followed "strong federal and state precedent," and reasoned that, "the 'no mercy' instruction directed the jury to focus on the aggravating and mitigating evidence rather than on 'mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling.'" *Lafferty,* 20 P.3d at 373

---

[3] Instruction No. 1 of penalty phase instructions instructed the jurors that all instructions which the jury received in the guilt phase applied to the penalty phase. R. 5097.

(quoting *State v. Young,* 853 P.2d 327, 364 (Utah 1993)). Lafferty argues that the Utah Supreme Court's reasoning was a misapplication of clearly established federal law. Lafferty has not met his AEDPA burden.

In *California v. Brown,* 479 U.S. 538 (1987), Brown raised a claim identical to this one, based on jury instruction language identical to that given to Lafferty's sentencing jury. As in Lafferty's case, the trial court in *Brown* instructed the jury that it "'must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.'" *Brown,* 479 U.S. at 540 (quoting California Penal Code Ann. § 190.3 (1987)). Like Lafferty, Brown claimed that the instruction violated his right to have the sentencing jury consider all relevant mitigating evidence. *Id.* at 540-41.

The Supreme Court rejected Brown's claim, reasoning that "[r]eading the instruction as a whole, as we must, it is no more than a catalog of the kind of factors that could improperly influence a juror's decision to vote for or against the decision." *Id.* at 543. The Supreme Court continued that "a rational juror could hardly hear this instruction without concluding that it was meant to confine the jury's deliberations to considerations arising from the evidence presented, both aggravating and mitigating." *Id.* The trial court in Lafferty's case clearly stated this latter principle in the sentence preceding the anti-sympathy language: "You are to be governed solely by the evidence introduced in this trial and the law as stated by me." *Lafferty,* 20 P.3d at 372.

The Utah court cited additional authority that forecloses concluding that it contradicted or unreasonably applied Supreme Court precedent. In *Saffle v. Parks,* 494 U.S. 484 (1990), the United States Supreme Court considered whether its precedent "dictated" rejecting an instruction that the jury "must avoid any influence of sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence." *Id.,* at 487-88. The Court recognized that its precedent

required allowing the jury to consider "*as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 489 (emphasis in the original). The Supreme Court went on to hold that that precedent did *not* dictate that the trial court should not have instructed the jury to "avoid any influence of sympathy, sentiment, passion, [or] prejudice." *Id.* at 489-93.

Accordingly, the Utah Supreme Court did not contradict or misapply controlling United States Supreme Court authority by holding that the trial court properly denied Lafferty's mercy instruction and instead instructed the jury to sentence him on the penalty-phase evidence and not on "mere" emotion. The fourteenth claim for relief is denied.

FIFTEENTH CLAIM FOR RELIEF

THE DEATH SENTENCE IMPOSED AGAINST LAFFERTY IS UNCONSTITUTIONAL BECAUSE HE WAS DENIED THE PROCEDURAL SAFEGUARD OF A PROPORTIONALITY REVIEW OF HIS SENTENCE IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### 1.  Exhaustion

The parties agree that this claim for relief has been exhausted. Doc. No. 69, Exhibit K at 5. The claim was presented to the Utah Supreme Court, which rejected it on the merits. *See Lafferty,* 20 P.3d at 374-76.

### 2.  The Merits

Lafferty claims that his death sentence is unconstitutional because "he was denied the procedural safeguard of a meaningful proportionality review by the state appellate courts." Doc. No. 39 at 151. Although he acknowledges that "proportionality review is not constitutionally required," he claims that "once a state chooses to include proportionality review, the state cannot administer that safeguard in an unconstitutional manner." *Id.* at 152. He asserts that adequate

appellate review "must be based on a comparison of similar cases and ultimately must focus on the character of the individual and circumstances of the crime." *Id.* He also claims that the Utah Supreme Court's proportionality review was inadequate because the court limited its comparison "to only those cases in which the death penalty was imposed." *Id.* at 153-54.

Lafferty fails to meet his AEDPA burden on this claim. He cites no United States Supreme Court authority holding that an appellate court must engage in the type of proportionality review that he describes. In *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984), the United States Supreme Court held that the Constitution does not require an appellate court to engage in "comparative proportionality review" of a death sentence. Although a capital sentencing scheme must be designed to avoid arbitrary and inconsistent results, the Constitution does not mandate appellate proportionality review as the sole means for doing so. *Id.* at 44-45 (citing *Furman v. Georgia,* 408 U.S. 238, 240 (1972)). Evenhanded, rational and consistent application of the death penalty can be achieved by a variety of means. *Id.* at 45-50 (comparing the various capital sentencing schemes of Georgia, Florida, and Texas). The Court in *Pulley* concluded that "[t]here is no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it." *Id.* at 50-51.

In *Zant v. Stephens,* 462 U.S. 862, 879 (1983), a case Lafferty relies on to support this claim, the Supreme Court did not base its holding on the presence of comparative proportionality review. "To the contrary," as the Court explained in *Pulley,* "we relied [in *Zant*] on the jury's finding of aggravating circumstances, not the State Supreme Court's finding of proportionality, as rationalizing the sentence." *Pulley,* 465 U.S. at 50.

Like the statutory schemes in *Pulley* and *Zant*, Utah's capital sentencing scheme requires a factfinder to first find at least one statutory aggravator beyond a reasonable doubt before the defendant becomes eligible for a death sentence. *See* Utah Code Ann. § 76-5-202(1) (2004). The trial then proceeds to a penalty phase where additional evidence is presented and the death penalty can only be imposed if "the jury is persuaded beyond a reasonable doubt that total aggravation outweighs total mitigation . . . and the imposition of the death penalty is justified and appropriate in the circumstances." Utah Code Ann. §§ 76-3-207(1)(a) & (5)(b) (2004). Utah's scheme also provides for automatic appellate review of a death sentence. Utah Code Ann. § 76-3-206(2)(A) (2004).

The Utah Supreme Court held in this case that "proportionality review is not required under the federal constitution . . . or under our state constitution." *Lafferty,* 20 P.3d at 374 (citing *Pulley v. Harris,* 465 U.S. 37, 40-50 (1984) and *State v. Carter,* 888 P.2d 629, 657 (Utah 1995)). The court went on to explain that it would nevertheless engage in proportionality review to determine "(1) whether the death penalty was imposed in an invidious fashion against a particular group of people; (2) whether the death penalty was proportionate to defendant's level of culpability; and (3) whether defendant's sentence was in proportion to the general pattern of cases in our state." *Id.* The court found Lafferty's sentence to be proportionate under these standards. *Id.* at 374-76. Lafferty demonstrates no federal constitutional error in this holding. The fifteenth claim for relief is denied.

## SIXTEENTH CLAIM FOR RELIEF

LAFFERTY'S DEATH SENTENCE VIOLATES THE EIGHTH AMENDMENT'S PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT BECAUSE HIS SENTENCE IS CLEARLY DISPROPORTIONATE TO THAT OF HIS CO-DEFENDANT

### 1. Exhaustion

This court has found that this claim is exhausted. "Lafferty presented the substance of this federal claim to the state court, and now takes issue with the facts and legal reasoning that the state court relied upon to deny it." Doc. No. 370 at 12.

### 2. The Merits

In Claim 16, Lafferty argues that it is unconstitutional to sentence someone to death who did not actually kill, attempt to kill, or intend to kill, or act as a major participant "with reckless indifference to human life." *Edmund v. Florida,* 458 U.S. 782, 801 (1982); *Tison v. Arizona*, 481 U.S. 137, 147 (1987). He also argues that the Utah Supreme Court erroneously relied on Chip Carnes' testimony over Dan's in rejecting the proportionality argument he made to that court. Doc. No. 39 at 155-57.

On direct appeal to the Utah Supreme Court, Lafferty argued that his death sentence was unconstitutionally disproportionate to Dan's sentence because Dan got a life sentence even though he admitted killing both Brenda and Erica, yet Lafferty received a death sentence even though the evidence indicated that Lafferty did not kill anyone. The Utah Supreme Court rejected the argument, finding it to be a "one-sided" view of the evidence. *Lafferty,* 20 P.3d at 375. Relying in part on Carnes' testimony that Lafferty admitted killing Brenda, the court found "ample evidence to support the jury's verdict of guilty of two counts of aggravated murder—that defendant committed at least one of the murders with his own hand and masterminded the scheme that resulted in the deaths of both Brenda and Erica Lafferty." *Id.*

Once again Lafferty fails to meet his burden of demonstrating that the state court's rejection of this claim was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or that it was based

on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Lafferty cites *Enmund* and *Tison* for the proposition that "the death penalty [is] a

disproportionate punishment for the crime of felony murder where the defendant did not actually

kill, attempt to kill or intend to kill, or act as a major participant with reckless indifference to

human life." Doc. No. 39 at 155. He then states, without analysis, that "[a]pplying this law to

Lafferty's case, it is clear that his death sentence is disproportionate and thus, should be

reversed." Doc. No. 39 at 156. The court disagrees. Even if Lafferty did not commit one of the

murders himself, he fails to explain how masterminding the scheme that resulted in the murders

of both Brenda and Erica and accompanying Dan in carrying out that scheme, did not constitute

"intend[ing] to kill," or at a minimum, "act[ing] as a major participant with reckless indifference

to human life." *Edmund v. Florida,* 458 U.S. 782, 801 (1982); *Tison v. Arizona*, 481 U.S. 137,

147 (1987). Lafferty is not entitled to relief on this claim

SEVENTEENTH CLAIM FOR RELIEF

UTAH'S CAPITAL SENTENCING SCHEME VIOLATES THE DUE PROCESS CLAUSE OF
THE FOURTEENTH AMENDMENT BECAUSE IT SHIFTS THE BURDEN TO THE
DEFENDANT TO OVERCOME EVIDENCE OF THE CONVICTION

**1. Exhaustion**

The parties agree that this claim is fully exhausted. *See* Doc. No. 69, Exhibit K at 6.

**2. The Merits**

Lafferty claims that Utah's capital sentencing scheme shifts the burden to the defendant

to overcome evidence of the conviction, and thus violates the Due Process Clause of the

Fourteenth Amendment. Lafferty notes that the penalty phase jury was first instructed that he had

been found guilty of two counts of capital murder for intentionally killing two people, and then

later instructed that it should consider as an aggravating factor that "'[t]he homicide was

committed incident to one act, scheme course of conduct, or criminal episode, during which two persons were killed.'" Doc. No. 39 at 161 (quoting R. 2655). Lafferty concludes that "because the jury had already determined that one aggravator was satisfied beyond a reasonable doubt, the burden of proving that life without the possibility of parole was appropriate was shifted to Lafferty." *Id.* at 162.

The Utah Supreme Court relied on *Lowenfield v. Phelps,* 484 U.S. 231 (1988), in rejecting this claim. It held that "consideration of aggravating circumstances in both the guilt phase and penalty phase of a trial does not de facto shift the burden of proof to the defendant or render the sentencing scheme unconstitutional." *Lafferty,* 20 P.3d at 376. The Utah Supreme Court went on to hold that "just as aggravating factors from the guilt phase of the trial may be considered at the penalty phase, so may any mitigating evidence or factors presented in the case-in-chief." *Id.*

Lafferty asserts that the Utah Supreme Court's reliance on *Lowenfield* was erroneous, because that case involved a threshold death-eligibility question under Louisiana law and not a "weighing" statute, like Utah's. However, he does not explain why that distinction is material. Lafferty cannot meet his burden by merely distinguishing the United States Supreme Court precedent on which the Utah court relied. Rather, he must demonstrate that the United States Supreme Court has clearly decided the issue contrary to the way the Utah court decided it. *See Wright v. Van Patten,* 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented . . . 'it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law."'" (citations omitted)). Lafferty fails to cite any United States Supreme Court decision that holds that the sentencing-phase jury may not rely on an aggravating

circumstance that the same jury in the guilt phase found unanimously and beyond a reasonable doubt.

The *Lowenfield* case is sufficiently on point. A capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877 (1983). The *Lowenfeld* Court explicitly held that it made no difference that the "'narrowing function' was performed by the jury at the guilt phase" of the trial. *Lowenfeld*, 484 U.S. at 246 ("The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm."). The seventeenth claim for relief is denied.

## TWENTY-FIRST CLAIM FOR RELIEF

THE TRIAL COURT'S ADMISSION OF AN UNDULY GRUESOME VIDEOTAPE RESULTED IN THE DENIAL OF A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS, VIOLATED DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS AND RENDERED THE DEATH SENTENCE UNRELIABLE UNDER THE EIGHTH AMENDMENT

### 1. Exhaustion

The parties agree that this claim for relief has been exhausted. *See* Doc. No. 69, Exhibit K at 6. The Utah Supreme Court rejected the claim on the merits. *See Lafferty,* 20 P.3d at 367.

### 2. The Merits

Lafferty claims that the admission of a "gruesome" video recording of the crime scene at the sentencing phase denied him a fundamentally fair sentencing because its "prejudicial effect outweighed its probative value on the relevant issues to be decided." Doc. No. 39 at 174.

Lafferty has failed to demonstrate that the Utah Supreme Court, in rejecting this claim, contradicted or unreasonably applied controlling United States Supreme Court precedent.

Under controlling Supreme Court precedent, the court must determine "whether the admission of evidence . . . so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process." *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994). The court must look at the entire sentencing phase to assess whether a due process violation occurred. In *Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003), the Tenth Circuit applied *Romano* in granting habeas relief based on the admission of photographs of the victim during the penalty phase of a capital trial. The photos were admitted to prove that the murder was especially heinous, atrocious, or cruel. That aggravating factor required proof that the murder was "preceded by torture or serious physical abuse." *Id.* at 1226. The photos at issue, however, depicted stab wounds, large gash wounds, exposed intestines, etc. that were primarily inflicted post-mortem (e.g., only two of the fifty stab wounds were peri-mortem).

As a result, the Tenth Circuit in *Spears* found that the photographs were only "minimally relevant" to establish the aggravating factor and therefore their prejudicial effect outweighed their probative value. *Id.* at 1228. The Tenth Circuit also noted that the timing of the use of the photos contributed to their decision. *Id*. ("[T]he state introduced comparatively innocuous photographs at the first stage, seeming to deliberately await the second stage to present the more gruesome photographs solely for their shock value."). Finally, the paucity of other evidence to support the heinous, atrocious, or cruel aggravator, when viewed together with the mitigation evidence, led the Tenth Circuit to conclude that "such evidence was not sufficiently strong that the jury would have returned a sentence of death." *Id.*

The State correctly points out that many of the factors present in *Spears* are not present here. The videotape at issue was introduced, not only to establish the multiple victim aggravator, but also because it was "demonstrative of the circumstances of the crime, of defendant's character, and of aggravating factors." *Lafferty*, 20 P.3d at 368. Utah law required the sentencing jury to consider the nature and circumstances of the murders and Lafferty's character, background, history, mental and physical condition, and other facts in aggravation and mitigation of the penalty. Utah Code Ann. § 76-3-202(2)(a). The jury could consider the brutality of the murders in assessing the nature and circumstances of the crime. *See State v. Menzies,* 889 P.2d 393, 405 (Utah 1994) (holding "the nature and circumstances of the crime, including its brutality" are appropriate considerations in a capital sentencing proceeding).

Furthermore, the video in this case was not as gruesome as the one at issue in *Spears*. It consisted of a short 107 second excerpt from the original crime scene video, edited to lessen its impact on the jury. R. 5183-84. It "was of poor quality and in black and white, with parts of the tape intentionally blacked out." *Lafferty*, 20 P.3d at 367. It did not show the fatal wounds or close ups of the victims. These facts and the broad purpose for which the video was offered adequately distinguish this case from *Spears*. Given the nature of the video, and its relevance to the issues at sentencing, its admission did not render Lafferty's sentencing fundamentally unfair.

Lafferty also argues that the videotape constituted victim impact evidence, and as such it exceeded the permissible bounds of relevance, was unduly prejudicial, and violated his due process rights and his constitutional right to a fair sentencing. Lafferty does not explain how the crime scene video could be considered victim impact evidence. Doc. No. 39 at 178-79. The Utah Supreme Court held that "the video does not fit the definition of victim impact evidence." *Lafferty,* 20 P.3d at 367. The United States Supreme Court has explained that "victim impact"

evidence is evidence that "is designed to show . . . each victim's uniqueness as an individual human being," and also relates to "the impact of the murder on the victim's family." *Payne v. Tennessee,* 501 U.S. 808, 823, 827 (1991). The Utah Supreme Court correctly held that the crime scene video did not meet this definition of victim impact evidence as it "in no way speaks to the victim's character, effects of the crime on the surviving family, or any opinions of the surviving members about the crime." *Lafferty,* 20 P.3d at 367. Rather, "it accurately and impartially portray[ed] exactly what took place at the crime scene." *Id.* This court agrees. The twenty-first claim for relief is denied.

TWENTY-SECOND CLAIM FOR RELIEF

THE TRIAL COURT VIOLATED LAFFERTY'S FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENT RIGHTS BY ALLOWING THE STATE TO SHOW THE JURY A VIDEO OF STATEMENTS MADE BY LAFFERTY TO THE MEDIA IN SEPTEMBER 1984

### 1. Exhaustion

The parties agree that this claim for relief has been exhausted. *See* Doc. No. 69, Exhibit K at 6. The claim was rejected on the merits by the Utah Supreme Court. *See Lafferty,* 20 P.3d at 370-73.

### 2. The Merits

During the penalty phase, over Lafferty's objection, the trial court admitted two video clips of press conferences with Lafferty and Dan. Lafferty argued that the introduction of the clips constituted error because (1) they "contained evidence of lack of remorse, which should not have been allowed without defendant first having offered evidence of remorse," (2) they "were neither 'relevant' nor 'probative' of his *current* state of mind or of any other statutory factor upon which the jury could base its decision," and (3) they were unduly prejudicial because they showed him in an orange jump suit in the custody of law enforcement. 20 P.3d at 370 (emphasis

in original). The Utah Supreme Court rejected all three arguments. Lafferty argues that the state court rejection of this claim was contrary to, or involved an unreasonable application of United States Supreme Court precedent. However, he identifies no United States Supreme Court authority that conflicts with the Utah court's decision.

Lafferty seems to argue that lack of remorse is irrelevant to sentencing because it "fails to focus on 'the character of the [defendant] and circumstances of the crime.'" Doc. No. 39 at 180-81 (citing *Zant v. Stephens,* 462 U.S. 862, 879, 885 (1983)). As the State points out, Lafferty does not explain why his lack of remorse for participating in the murder of a young mother and her 15-month-old baby is not relevant to his character or to the crime circumstances.

In order for Lafferty to meet met his AEDPA burden on this issue, he must show that the United States Supreme Court has decided this issue contrary to the Utah court's disposition. He has not done so. He cites no United States Supreme Court case that clearly decided that a capital sentence may not consider a defendant's lack of remorse in determining whether to impose the death sentence.

Lafferty also argued that a video of Lafferty, taken twelve years prior to his trial, was not relevant to his lack of remorse at the time of his sentencing. The Utah court rejected this argument and held that a sentencing "jury may consider remorsefulness at any stage of the events at issue or at any stage of trial." *Lafferty,* 20 P.3d at 371. The court went on to say that "[a] sentencing jury's consideration is not restricted to factors that exist only at sentencing, but encompasses a range of factors in order to get as complete a picture of the defendant as possible, including his remorse." *Id.* The court noted that "[r]emorse expressed only at sentencing is highly suspect." *Id.* Lafferty cites no United States Supreme Court decision that limits the

sentencing court's consideration of remorse or lack of remorse to only that which the defendant feels at the time of sentencing. Lafferty has not met his AEDPA burden on this issue.

Lafferty also argued that the video was unduly prejudicial because it showed him in an orange jumpsuit and surrounded by law enforcement officials. The Utah Supreme Court noted that while it is unconstitutional for an accused to stand trial in prison clothing, no such violation occurred here because Lafferty had already been convicted by the time the sentencing jury saw him in prison clothing. *Lafferty,* 20 P.3d at 371-72. Lafferty cites no United States Supreme Court authority holding otherwise.

Lafferty's final argument, that he was in a psychotic state when he made the statements in the video clips and that presenting them at sentencing violated his right to remain silent, was not presented to the Utah Supreme Court and therefore is unexhausted and procedurally defaulted. The twenty-second claim for relief is denied.

### TWENTY-SEVENTH CLAIM FOR RELIEF

**THE TRIAL COURT VIOLATED LAFFERTY'S DUE PROCESS RIGHTS WHEN IT FOUND HIM COMPETENT TO STAND TRIAL**

**1. Exhaustion**

The parties agree that this claim has been properly exhausted. Doc. No. 69, Exhibit K. On direct appeal, Lafferty claimed that the trial court's competency finding was clearly erroneous. *Lafferty,* 20 P.3d at 358-59. The Utah Supreme Court rejected this claim, concluding that "there was ample evidence to support the trial court's finding of competency." *Id.*

**2. The Merits**

Lafferty asserts that the Utah Supreme Court erroneously affirmed the trial court's findings that he was competent to stand trial, violating his constitutional rights, and ruling contrary to established federal law set forth by the United States Supreme Court. As evidence for

his claim, Lafferty points to several facts which he believes show that he was incompetent to stand trial, focusing primarily on the ability to consult with his lawyer and have a rational degree of understanding.

First, he points out that three medical doctors testified that he was not competent to stand trial due to a mental illness. One doctor went so far as to say that Lafferty had no rational understanding, and it would be a mistake to proceed with trial. Lafferty therefore argues that the court relied too heavily upon the state's expert witnesses, despite the weight of evidence and testimony suggesting his incompetence. Finally, Lafferty asserts that his due process rights were violated when the trial court did not follow procedures set forth in the Utah Code. The Utah Supreme Court agreed that the trial court did not comply with the statute by holding a hearing within one day of the receipt of the expert reports; however, it ruled that such error was harmless.

Lafferty has not demonstrated that the Utah Supreme Court unreasonably applied established federal law when it rejected his claim that the trial court violated his due process rights when it found him competent to stand trial.

First, Lafferty does not suggest any meaningful reason other than his own expert's testimony to demonstrate he was incompetent to stand trial. The Utah Supreme Court correctly affirmed the trial court's use of the competency standard discussed in *Dusky v. United States*, 362 U.S. 402 (1960), and made its findings only "after carefully considering the opinions of each of the eight expert witnesses." *Lafferty,* 20 P.3d at 358. The court also properly affirmed the trial court's reasoning for finding the State's experts' opinions to be entitled to more weight than those of Lafferty's experts. Lafferty proffers no compelling evidence to the contrary. The only evidence that he cites to are his own expert's opinions which were rejected by the trial court.

Thus, Lafferty fails to overcome the burden of rebutting the presumption of correctness "by clear and convincing evidence," set forth by the AEDPA. 28 U.S.C. § 2254(e)(1).

Furthermore, there is ample evidence to support the trial court's finding that Lafferty was competent to stand trial, and that the State's experts' opinions were entitled to more weight than Lafferty's experts.[4] Shortly after the March 1996 competency hearing, the trial court issued a 16-page memorandum decision that detailed why the State's experts' testimonies were more persuasive than Lafferty's experts. The memorandum decision pointed to the ability of the State's expert witnesses to point to specific parts of their interviews with Lafferty to support their conclusions. *See* Doc. No. 69 at 143-44. It also pointed out that the testimony of the State's experts was corroborated by two lay witnesses and jail guards who had interacted with Lafferty for the period of his incarceration. *Id.* Finally, it discussed the court's own interactions with Lafferty and observations it made during the proceedings. Those experiences aligned more closely with the testimony of the State's experts. *Id.* at 144.

Ultimately, the Utah Supreme Court properly affirmed the trial court's findings that the State's experts' opinions were entitled to more weight than Lafferty's experts and the evidence sufficiently showed that Lafferty was competent to proceed with trial.

Lafferty also claims that the trial court denied him due process when it misapplied Utah's competency statute. Utah Code Ann. § 77-15-5. He specifies that the trial court violated the statute by (1) appointing experts who had been identified as witnesses, (2) failing to observe the statutory time periods, and (3) allowing the experts to testify without adequately examining Lafferty. Lafferty argues that the Utah Supreme Court contradicted or unreasonably applied controlling United States Supreme Court precedent.

---

[4] This opinion only discusses a handful of the relevant facts set forth by the State. A more detailed analysis of each individual fact can be found in the State's response brief. Doc. No. 69 at 145-51.

Lafferty fails to cite any United States Supreme Court precedent holding that a state has denied due process by failing to properly apply its own competency statutes in the ways alleged by Lafferty in his petition. This alone is sufficient to deny his claim. However, Lafferty's federal habeas claim is insufficient for several additional reasons. *See* Doc. No. 69 at 152-58. Lafferty is mainly concerned about a competency hearing that was requested after new allegations arose as to Lafferty's competency shortly before the trial was to begin. Experts were appointed by the court, some of whom had previously been directed to investigate Lafferty's competence to stand trial and Lafferty offered no objection.

The Utah Supreme Court properly affirmed the trial court's use of eight experts familiar with Lafferty, holding this did not violate section 77-15-5. The statute only requires that the court use "two mental health experts not involved in the current treatment of the defendant." Utah Code Ann. § 77-15-5(2). None of the eight examiners were involved in Lafferty's "current treatment," and the use of more than two experts assured that the competency determination would be made with the most information possible. Furthermore, Lafferty's claim also ignores the timing of the competency evaluation at issue. This was not the first challenge to his competency, but rather the third time experts considered this issue. In using experts familiar with the case, the court protected Lafferty's rights to the fullest extent, as it based its decision on the testimony of experts with the most relevant information.

Finally, Lafferty argues that the matter was expedited in a way that was not permitted under section 77-15-5. The Utah Supreme Court acknowledged that the trial court failed to follow the statutory timetable when it set the competency hearing the day after it received the expert reports, instead of waiting the five to 15 days required by the statute. However the court held that any error was harmless because Lafferty failed to show how additional preparation time

would have changed the outcome of the proceeding. *Lafferty*, 20 P.3d at 356. Lafferty has failed

to show that the Utah Supreme Court contradicted or unfairly applied any United States Supreme

Court precedent.

TWENTY-EIGHTH CLAIM FOR RELIEF

**THE TRIAL COURT VIOLATED LAFFERTY'S DUE PROCESS RIGHTS WHEN IT
DENIED HIS MOTION FOR A NEW TRIAL**

### 1. Exhaustion

The Utah Supreme Court rejected this claim on the merits. *See Lafferty,* 20 P.3d at 361.

The parties agree that this claim has been exhausted. Doc. No. 69, Exhibit K, at 6.

### 2. The Merits

Lafferty claims that the trial court violated his due process rights by denying his motion

for a new trial on the grounds that he was incompetent during trial. Doc. No. 39 at 207-16. He

has failed to demonstrate, however, that the Utah Supreme Court's holding affirming that ruling

was contrary to or involved an unreasonable application of United States Supreme Court

precedent or that it was based on an unreasonable determination of the facts in light of the

evidence presented. *Id.* Lafferty simply reargues the same evidence that both the trial court and

the Utah Supreme Court considered and found insufficient to raise a serious doubt about his

competency during trial. The state court's factual findings are presumed to be correct, and

Lafferty has failed to rebut that presumption of correctness.

About six weeks after his trial, Lafferty filed a motion for new trial, claiming that he

should have been declared incompetent at some point during the trial proceedings. He presented

the affidavit of Dr. Breck Lebegue, who had interviewed him and observed him at his sentencing

and who concluded that he suffered a mental disorder which "impaired his concentration,

attention, and ability to rationally cooperate with counsel to some degree both prior to and during

trial." R. 5266. The Utah Supreme Court held that Dr. Lebegue's observations, along with those of defense counsel, an extern, and a legal assistant, failed to raise any new questions from those already determined in the March 1996 competency hearing prior to trial. *Lafferty,* 20 P.3d 342, 361. The court agreed with the trial court that the affidavits "simply demonstrated that new people observed the same type of behavior already considered and ruled upon by the court." *Id.*

Part of the Utah court's opinion that Lafferty objects to is that the court discredited Dr. Lebegue's opinion because it was based on observations of Lafferty after the trial. The court stated, "[t]he value of this type of retrospective evaluation of competency has been questioned by the Supreme Court." *Lafferty,* 20 P.3d at 361 (citing *Dusky v. U.S.*, 362 U.S. 402 (1960)). Lafferty argues that because Dr. Lebegue's evaluation of him occurred within two months of his trial and on the same day as his sentencing, contemporaneous medical evidence was available, greatly increasing the chance for an accurate retrospective evaluation of his competence.

However, Dr. Lebegue himself recognized that he was making a retrospective competency evaluation. R. 5265-68. In his affidavit, Dr. Lebegue makes it clear that rather than opining on Lafferty's competency to proceed with sentencing, he "evaluated Ron Lafferty in regard to his mental state, specifically focussing [sic] on his mental state at the time of trial." R. 5267. Because he was evaluating Lafferty's mental state during a trial that occurred more than six weeks before the evaluation, the state court's classification of the evaluation as "retrospective" was proper.

Lafferty also objects to the fact that "the Utah Supreme Court gave *no* consideration to the affidavits of Lafferty's defense counsel, a legal extern, or a legal assistant," who were, in Lafferty's words, "the ones with the most direct contact with Lafferty." Doc. No. 39 at 214-15. However, both the trial court and the Utah Supreme Court stated that they considered the

affidavits of Lafferty's defense counsel and assistants in their rulings. The trial court considered these non-expert affidavits and found "that none of the behavior alleged in the . . . accompanying affidavits . . . is in any material way different from the behavior considered by the Court during the competency hearing held immediately prior to trial." R. 5372. The state courts clearly did not ignore the non-expert affidavits.

The state court's factual finding that the affidavits submitted in support of Lafferty's new trial motion "simply demonstrated that new people observed the same type of behavior already considered and ruled on" is presumptively correct. 28 U.S.C. § 2254(e)(1). Lafferty has the burden of rebutting this presumption of correctness "by clear and convincing evidence." *Id.* He has failed to do so. Instead, he merely argues that the state courts should have given his evidence more weight. The twenty-eighth claim is denied.


THIRTIETH CLAIM FOR RELIEF

THE STATE POST-CONVICTION COURT'S DISMISSAL OF 25 CLAIMS ON GROUNDS THESE CLAIMS SHOULD HAVE BEEN RAISED ON DIRECT APPEAL VIOLATED LAFFERTY'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

### 1. Exhaustion

The parties agree that this claim has been exhausted. *See* Doc. No. 69, Exhibit K at 6. The State also concedes that the Utah Supreme Court considered and rejected the merits of Lafferty's ineffective assistance of appellate counsel claim. Doc. No. 69 at 168.

### 2. The Merits

Lafferty claims that the state post-conviction court denied him due process in dismissing 25 of his claims as procedurally barred because the claims could have been raised on direct appeal. Doc. No. 39 at 232-39. This claim fails because Lafferty cites no United States Supreme Court precedent holding that a state's failure to correctly interpret or apply its own statutes and

rules governing post-conviction review denies a post-conviction petitioner federal due process.[5] That omission is sufficient grounds for denying his claim. *See Wright v. Van Patten*, 128 S. Ct. 743, 747 (2008). Moreover, absent any United States Supreme Court precedent supporting his due process claim, Lafferty's complaints about the Utah court's interpretation and application of a Utah statute present only a state-law claim for which Lafferty cannot obtain federal habeas relief. *See Pulley v. Harris*, 465 U.S. 37, 40 (1984) ("A federal court may not issue the [habeas] writ on the basis of a perceived error of state law."); 28 U.S.C. § 2254(a).

Alternatively, assuming that Lafferty has properly raised a federal issue, he fails to demonstrate that the Utah Supreme Court contradicted or unreasonably applied any United States Supreme Court precedent in holding that his claims were procedurally barred. In responding to Lafferty's state petition, the State argued that 25 of the claims were procedurally barred because they could have been raised on direct appeal. *Lafferty*, 175 P.3d 530 at 540-41. The State moved for summary judgment on these claims. *Id.* In his memorandum opposing the summary judgment motion, Lafferty argued that his appellate counsel were ineffective for failing to raise these 25 claims. *Id.* The post-conviction court found that Lafferty's attempt to raise his ineffective assistance claim for the first time in his opposition to the State's summary judgment motion was procedurally improper and dismissed the 25 claims as procedurally barred. *Id.*

The Utah Supreme Court affirmed the dismissal of the 25 claims as procedurally barred. *Id.* at 541-42. The court agreed that Lafferty had improperly attempted to raise his ineffective assistance of appellate counsel claim. *Id.* However, the court went on to hold that even if it were to consider his claims of ineffective assistance of appellate counsel, those claims would fail on

---

[5] Lafferty cites *Evitts v. Lucey*, 469 U.S. 387, 396 (1985) to support his due process claim. However, the United States Supreme Court has expressly rejected such a broad interpretation of *Evitts*. In *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987), the Court rejected the premise "that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume."

their merits because Lafferty "fail[ed] to show how appellate counsel's failure to raise [any of the 25 claims] on direct appeal amounted to constitutionally deficient performance." *Id.* Rather, Lafferty simply argued that counsel's failure to raise the claims on direct appeal was sufficient to demonstrate counsel's ineffectiveness. *Id.* The Utah Supreme Court rejected Lafferty's argument, holding that "[t]he mere repetition of the *Strickland* standard does not create the demonstrable reality of ineffective assistance necessary to overturn a conviction." *Id.* at 542. Moreover, the court held that Lafferty failed to establish any prejudice because he "ma[de] no attempt to show that the presentation of these claims would have likely resulted in reversal of his conviction." *Id.*

Lafferty claims that the Utah Supreme Court erred in affirming the dismissal of the 25 claims as procedurally barred because his assertion of an ineffective assistance of appellate counsel claim required the state post-conviction court to consider each of the 25 claims on their merits. Doc. No. 39 at 234-39. Lafferty misinterprets Utah's Post-Conviction Remedies Act. While the Act does provide an ineffective assistance of counsel exception to the "could have been raised" procedural bar, that exception does not allow a petitioner to have his procedurally barred claims considered on their merits. *See* Utah Code Ann. §§ 78B-9-106(1)(c) & (2) (2008). Rather, procedurally barred claims may only be considered under the rubric of an ineffective assistance of counsel claim. *Id.* § 78b-9-106(2). For the exception to the procedural bar to apply, the petitioner must "*demonstrate* that 'the failure to raise that ground was due to ineffective assistance of counsel.'" *Benvenuto v. State*, 165 P.3d 1195, 1200 (2007) (quoting Utah Code Ann. §§ 78-35a-106(1)(c) & (2)) (emphasis added). Therefore, Lafferty could have obtained state post-conviction relief only if he could have demonstrated that his appellate counsel was ineffective for failing to raise each of the 25 barred claims. *See id.*

The Utah Supreme Court considered and rejected the merits of Lafferty's ineffective assistance of appellate counsel claim. *Lafferty*, 175 P.3d at 541-42. Lafferty demonstrates no AEDPA error in that holding.

The Utah Supreme Court held that Lafferty could not demonstrate either prong of the *Strickland* test by simply repeating the *Strickland* standard. *Id.* at 542. Lafferty fails to demonstrate that this holding was contrary to, or unreasonably applied United States Supreme Court precedent. He cites no United States Supreme Court opinion holding that the mere incantation of the phrase "ineffective assistance of counsel" is sufficient to demonstrate a violation of the Sixth Amendment right to counsel. On the contrary, *Strickland* itself recognized "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that a defendant must overcome that presumption before he can succeed on an ineffective assistance claim. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

Lafferty also asserts that his state post-conviction counsel were ineffective in arguing his claim of ineffective assistance of appellate counsel. However, as explained, Lafferty has no constitutional right to the effective assistance of post-conviction counsel. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings."). Therefore, any alleged deficiency in post-conviction counsel's representation cannot entitle Lafferty to federal habeas relief.

Lafferty fails to show that the Utah Supreme Court contradicted or unreasonably applied any controlling United States Supreme Court precedent in holding that 25 of the claims in his state petition were procedurally barred. Consequently, this claim fails.

THIRTY-FOURTH CLAIM FOR RELIEF

**THE TRIAL COURT DENIED LAFFERTY HIS RIGHT TO A FAIR AND IMPARTIAL JURY UNDER THE SIXTH AND EIGHTH AMENDMENTS AND HIS RIGHT TO A FAIR TRIAL AND TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS IN THE PROCESS OF DEATH-QUALIFYING THE JURY**

### 1. Exhaustion

The parties agree that this claim is exhausted. Doc. No. 69 at 43, 181; Doc. No. 69, Exhibit K at 6. The Utah Supreme Court rejected the claim on the merits. *Lafferty*, 20 P.3d at 378.

### 2. The Merits

Lafferty has not met his burden of demonstrating that the Utah Supreme Court contradicted United States Supreme Court precedent by rejecting his claim that Juror 220 was improperly removed for cause. In *Uttecht v. Brown*, 551 U.S. 1 (2007), the Supreme Court discussed the standard required for removing a juror for cause. The *Uttecht* Court affirmed prior case law which permitted removing for cause "a juror who is substantially impaired in his or her ability to impose the death penalty under the state-law framework." *Id.* at 9. The Court reasoned that this standard balanced the criminal defendant's "right to an impartial jury drawn from a venire that has not been tilted in favor of capital punishment," and the State's "strong interest in having jurors who are able to apply capital punishment within the framework state law prescribes." *Id.* The *Uttecht* Court also emphasized that a court reviewing a trial court's decision to remove a juror for cause under the aforementioned standards must show deference, given the trial court's advantaged position of seeing the prospective juror's demeanor during *voir dire. Id.*

As in *Uttecht*, the Utah Supreme Court applied an appropriate standard in the case of Lafferty. The prospective juror in *Uttecht* answered that he would only vote for a death sentence when the defendant had wanted a death sentence, or when the state proved that he would re-

offend if released from prison. After being told a number of times that there was no possibility of release, the juror stated that he would "have to give some thought" to whether he could impose a death sentence. *Id.* at 15. Despite that fact that the prospective juror in *Uttecht* equivocated on whether he could follow state law and vote for the death penalty, the Supreme Court held that the state court had not contradicted or misapplied its precedent when it affirmed his removal for cause. *Id.*

In the case of Lafferty, Juror 220 never wavered from the stance that she would only vote for the death penalty in the narrowest of circumstances. She went so far as to state that she could impose the death penalty only if Lafferty had killed a close relative of hers. Because Utah state law says nothing about the death penalty only applying in scenarios where a prospective juror's family member had been harmed, *see* Utah Code Ann. § 76-3-207, Juror 220 unequivocally stated her refusal to set aside her personal beliefs and apply the law. The Utah Supreme Court thus used a proper standard relying upon Supreme Court precedent in dismissing Juror 220 for cause. Lafferty is not entitled to federal habeas relief because he has not shown the inconsistent application by the Utah Supreme Court of the standard set forth by the United States Supreme Court.

THIRTY-FIFTH CLAIM FOR RELIEF

LAFFERTY'S EXECUTION BY THE STATE OF UTAH AFTER TWENTY-TWO YEARS ON DEATH ROW VIOLATES HIS RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE IT SERVES NO LEGITIMATE PENOLOGICAL PURPOSE

### 1. Exhaustion

Lafferty presented this claim in his direct appeal to the Utah Supreme Court following his second trial. The Utah Supreme Court rejected the claim on the merits. *Lafferty,* 20 P.3d at 378-

79. The State concedes that this claim is properly exhausted. Doc. No. 69 at 188 and Exhibit K at 6.

## 2. The Merits

Lafferty argues that allowing him to be executed, after almost a quarter of a century on death row, would constitute cruel and unusual punishment in violation of the Eighth Amendment. He says that he has spent years "under brutal prison conditions, experiencing daily trauma of facing death," and that executing him now would not serve any legitimate purpose and would only add to his "psychological pain." Doc. No. 40 at 3. The Utah Supreme Court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.

The Utah court cited a number of cases where the United States Supreme Court denied certiorari in cases involving similar Eighth Amendment challenges, where defendants were on death row for twenty years or more. The Utah court quoted Justice Thomas in his concurrence in *Knight v. Florida,* 528 U.S. 990 (1999) (Thomas, J., concurring), one of the cases where the United States Supreme Court denied certiorari, stating that he is unaware of "any support in the American constitutional tradition or in [the Supreme] Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed." *Id.* at 990.

While Lafferty relies on *Gregg v. Georgia,* 428 U.S. 153 (1972), to support his argument, the substance of the analysis that Lafferty cites does not conflict with the Utah court's holding. In *Gregg,* Justice Stewart states that "the sanction imposed cannot be so totally without penological justification that it results in the gratuitous infliction of suffering." *Id.* at 183 (Stewart, J. with two justices concurring). He then goes on to focus on the reasons for allowing

states to impose a death sentence in the first place. He states, "[t]he death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders. In part, capital punishment is an expression of society's moral outrage at particularly offensive conduct." *Id.* Nothing in Justice Stewart's analysis even intimates that a condemned person's success in delaying his death sentence for "almost a quarter century" de-constitutionalizes that sentence. Lafferty has not demonstrated that the United States Supreme Court so clearly answered this issue in his favor that the Utah court should have vacated his death sentence.

## IV.   CONCLUSION

For the reasons set forth above, Lafferty's claims in his Second Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 39 & 40), are hereby denied.

SO ORDERED this 4th day of October, 2017.

BY THE COURT:

Dee Benson
United States District Judge